[Civ. No. 9459. Third Dist. Oct. 24, 1958.]

SHERMAN LANE et al., Petitioners, v. INDUSTRIAL
ACCIDENT COMMISSION et al., Respondents.

Rockwell, Fulkerson & Wilson for Petitioners.

E. A. Corten, Daniel C. Murphy, Emily B. Johnson, Donald Gallagher and Loton Wells for Respondents.

VAN DYKE, P. J.—This is a proceeding in mandate to review an order of the Industrial Accident Commission in favor of petitioners' employer, Paul Bunyan Lumber Company, and its insurance carrier, State Compensation Insurance Fund.

There is no substantial conflict as to the facts. Petitioners have been regularly employed as fallers by the Paul Bunyan Lumber Company in Susanville, California, for more than 10 years. During that period each resided in Susanville, California, the site of the mill and office of said respondent. At the opening of the 1957 logging season petitioners reported at the employer's office in Susanville. Their first falling operation was in an area known as Hog Flat, which is situated 8 or 9 miles northwest of Susanville. Fallers work in pairs and there were five pairs of fallers directed to work in the Hog Flat area. Under their contract of employment they are required to provide their own working equipment which consists of gasoline powered chain saws which weigh approximately 40 pounds, axes, wedges, hand tools and gasoline to power the saws. The company, as a part of the contract of employment, or as an incident thereto, rents the chain saws from the fallers at a rate of 50 cents per one thousand board feet cut during straight time employment. The fallers work in a different portion or area of a logging site from other woods employees. The company has exclusive control over production and good

practice dictates that the fallers keep at least one million board feet ahead of the other woods employees to assure a continuous operation. All of the woods employees, including fallers, work an eight hour day, commencing at 7 o'clock each morning and laying off at 3:30 each afternoon, with one-half hour for lunch at noon. The fallers receive compensation at the rate of Two and 08/100 ($2.08) Dollars per one thousand board feet of timber cut during the regular work day. In addition, all woods employees receive credit for each hour they are on the job for the purpose of calculating the number of days vacation with pay to which each would be entitled. All the other woods employees are paid on a straight hourly wage basis. Customarily the fallers transported their tools and gasoline to the area to be worked by them and left them there until their work was done in that area, that is, the tools were not taken back and forth at the end and the beginning of each day. Sometimes when the saws required special attention a saw would be taken back for that purpose and returned to the job. All of the other woods employees were furnished transportation by the employer to and from work in a company owned truck. An exception was made, however, with respect to the fallers and the evidence is that this was dictated by the fact that they often had to transport their tools, including the saws and cans containing gasoline. Gasoline, under a safety order of the commission, could not be transported in a truck used to haul employees. It appears that the requirement the fallers furnish their own transportation stems mainly from this peculiarity of their employment which involved the use and transportation of power-driven saws.

Petitioners, after reporting to respondent's Susanville office, received directions to proceed to the Hog Flat area and commence falling. The logging site could be reached by a private logging road running from the company's plant in Susanville to the site, or by a publicly maintained road which parallels the logging road to a point within approximately one mile of the logging site. All of the woods employees, including petitioners, returned to their respective homes in Susanville at the end of each working day. They could use either the company logging road or the public road on these trips, but they usually elected to use the public road because of the hazard created by logging trucks running on the company road. This election, however, indicated merely their preference and was not a matter of order by the employer,

although undoubtedly their customary use of the public roads was known to the employer.

Petitioners, together with the other fallers, worked at the Hog Flat logging site from a beginning date early in May to July 22, 1957. On the morning of that day, the woods boss indicated the line through the woods which marked the boundary of the property under lease by the employer. The fallers were instructed to cut only up to that line. They were ordered then to move all their working equipment to an area where they had cut fir the previous year in the vicinity of Worley Mountain. The Worley Mountain site is approximately 19 miles north of Susanville. It is reached either by a logging road or by public roads leading through Susanville. By 2:30 in the afternoon on the day in question the fallers had cut up to the designated line. They then loaded their trucks with their equipment and gasoline cans and proceeded down the logging road for approximately one mile to its juncture with the public road. Turning onto the public road they drove in the direction of Susanville. Petitioners were traveling in a pick-up owned and driven by Lane. About 3½ miles down the public road the left front wheel of the truck was struck by a large deer running across the road, causing an accident which resulted in injuries to each petitioner.

The accident occurred at 2:55 p.m., which was before the end of the regular working day. However, petitioners were on their way home and had been instructed to go to the Worley Mountain site the next morning. In other words, their work of falling trees was over for that day. Since they were paid on the piece work basis, it is clear that their pay had ceased also for that day, but apparently because they were within the normal working day each received credit on vacation time for the entire day ending at 3:30 p.m. It was testified that if petitioners had completed their work at Hog Flat in the morning instead of in the afternoon they would have moved their equipment to the Worley Mountain site and finished out the day there.

From the foregoing facts the commission determined that at the time of their injuries the petitioners were not within the protection of the Workmen's Compensation Act. Specifically the commission found as to each: "That the evidence fails to establish that the applicant sustained an injury arising out of and occurring in the course of the employment." Whether or not the record substantially supports the award is the issue presented on this review.

 In support of the commission's ruling, its attorneys and the attorneys for the fund argue that the facts here justified the commission in applying the so-called going and coming rule and that the facts do not show that petitioners come within any exception to that rule. We do not agree. Petitioners were employees. They were in no sense independent contractors, notwithstanding they were required to furnish specialized equipment for the performance of their work and were paid on a piecework basis. Courts are familiar with the widely known fact that specialized equipment for fallers, especially the chain saws used by them, are merely a part of what has now become highly mechanized methods of getting logs from the land whereon the trees grow to the mills where they are manufactured into forest products. Certainly, this employer never contemplated harvesting timber without the use of this equipment. There may have been good reasons for requiring fallers to furnish their own chain saws and other less highly mechanized equipment, but nothing in this record would support an inference that the saws were not a usual and necessary part of the modern logging operation. We think the use and care of this equipment was an integral part of the total service to the employer being rendered by petitioners. We think also that when at the end of the Hog Flat operation the fallers were ordered to report on the next day to the Worley Mountain site, the transportation by them of their equipment from the old site to the new was service rendered to the employer. The fact that on this particular occasion the required transportation was not completed during a single working day was, according to the testimony, a pure coincidence arising from the fact that the fallers finished their work at Hog Flat at an hour which rendered it undesirable to both employer and employees that they transport the equipment to the new site on that day. The fact that they were to go home and go to the new site with the equipment on the following day does not militate against the proposition that in transporting the equipment from the old to the new site they were performing a service for the employer incidental to their employment and contemplated by employment conditions. Where an employee although going to his home at the time of his injury is at the time and within the usual hours of employment performing a service for his employer contemplated by the conditions of his employment he is not subject to the going and coming rule which assumes as a necessary basis for its application that the relationship of

employer and employee has ceased when the employee has finished his work for the day and has left the premises of his employer. Here the record discloses, without dispute, that these conditions had not arisen. ▮ The proper rule of decision in this case is well stated in *Kobe* v. *Industrial Acc. Com.*, 35 Cal.2d 33, 35 [215 P.2d 736], wherein the court said:

"It is the general rule that injuries sustained by an employee going to or returning from work are not compensable under the Workmen's Compensation Act. The rule is premised on the theory that ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. (*California Cas. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal.2d 751, 754 [135 P.2d 158].) ▮ However, the employer may agree, either expressly or impliedly, that the relationship shall continue during the period of 'going and coming,' in which case the employee is entitled to the protection of the act during that period. ▮ Such an agreement may be inferred from the fact that the employer furnishes transportation to and from work as an incident of the employment. (*California C. Indem. Exch.* v. *Industrial Acc. Com.*, 21 Cal. 2d 461 [132 P.2d 815]; *Trussless Roof Co.* v. *Industrial Acc. Com.*, 119 Cal.App. 91 [6 P.2d 254]; *cf. Breland* v. *Traylor Eng. etc. Co.*, 52 Cal.App.2d 415 [126 P.2d 455].) It seems equally clear that such an agreement may also be inferred from the fact that the employer compensates the employee for the time consumed in traveling to and from work."

▮ Here the inference must be drawn from the transportation of the employer of all woods workers to and from job site, except fallers, in an integrated and coordinated operation and from the differing arrangements with fallers and the reasons therefor which required that they perform service beneficial to the employer in the care of their equipment and in its transportation from job site to job site. While they were doing these things they were under the act.

The order under review is annulled and the cause remanded.

Schottky, J., and Warne, J. pro tem.,* concurred.

The petitions of respondents Industrial Accident Commission and State Compensation Insurance Fund for a hearing by the Supreme Court were denied December 17, 1958. Spence, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.