[Civ. No. 33005.   Second Dist., Div. Three.   Oct. 10, 1968.]

EDWARD JOYNER, Petitioner, v. WORKMEN'S COM-
PENSATION APPEALS BOARD, STATE COMPEN-
SATION INSURANCE FUND et al., Respondents.

Gross, Durante & Narvid and Ben N. Narvid for Petitioner.

Everett A. Corten and Sheldon M. Ziff for Respondents.

McCOY, J. pro tem.*—This is a petition for review of an order of the Workmen's Compensation Appeals Board denying an applicant's claim for compensation on account of injuries sustained in a traffic accident. The board found that applicant was not engaged in any activity on behalf of his employer at the time he was injured in the accident and that his injury did not arise out of and in the course of his employment. We have concluded that the evidence does not sustain the finding of the board and that its order denying applicant's claim must be annulled.

There is no substantial conflict as to the facts.[1] Applicant was driving a pickup truck on Huntington Drive near Rosemead while returning to his home between 4 and 4:30 p.m. on January 13, 1967, when the truck was struck from the rear by another vehicle. He was a heating and air conditioning installer and service man and had been employed by respondent employer for two or three years. He lived in Duarte. His employer's place of business was on West Jefferson Boulevard in Los Angeles. He worked in homes and business locations, sometimes servicing several customers each day. He went from job to job in a 1958 Ford pickup truck in which he hauled the employer's equipment, including tools, a vacuum, and special parts for servicing. The equipment was carried in the truck at all times and replaced as needed. It was sufficient for most jobs except where some special equipment or part was required from time to time.

Applicant owned the truck. He had purchased it in order to perform his job. His employer testified that the applicant needed a truck for the job, that he had the truck when he was

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

[1]The parties have stipulated, because of the inability of the board to obtain a transcript of the testimony of the witnesses at the hearings in time to include it in the return of the board to the writ of review, that the summaries made by the referee accurately and adequately reflect the substance of that testimony and may be used in place of the transcript in this proceeding.

hired, and that it was doubtful that he would have been hired if he did not have the truck.

It was the normal practice of the applicant to report to the shop of the employer each morning before proceeding to his job assignments. However, he sometimes went from his home directly to the job site, and sometimes went from the job site directly to his home after work. At night he left all of the equipment on the truck and locked the truck in his garage. He occasionally used the truck with a camper for personal purposes. There was no business sign on the truck.

Applicant was reimbursed by his employer once a week at the rate of 10 cents per mile for use of the truck. The normal procedure for mileage reimbursement was to take a mileage reading from the truck at the shop at the beginning and end of each day. If he went directly from his job site, the starting mileage was taken at the job site. If he went from the job site to his home instead of to the shop, at the end of the day, the ending mileage was taken at the job site.

Applicant had no memory of the particular job on which he had been working on the day of the accident. A time card reflected that on that date he began work at 8 a.m. and terminated his work at 3 p.m. Applicant testified that he was not normally reimbursed for mileage from work to home or from home to work.

Applicant also testified that he sometimes sold equipment for his employer and he used the truck in contacting customers. When he made a sale, he received a 10 percent commission of the total job. He estimated that during 1966 his commissions were between $1,000 and $2,000, but he could recall only two specific instances in 1966 when he contacted potential customers.

The referee denied applicant's claim for disability compensation, and made an award for reimbursement of his reasonably incurred medical-legal expense. In his opinion on his decision the referee says: ''Based upon the testimony of the applicant he was not acting within the course and scope of his employment at the time of the accident of January 13, 1967, and, therefore, the injuries resulting from that accident did not arise out of and occur in the course of his employment.'' The appeals board denied reconsideration. The opinion of the appeals board states: ''We have carefully reviewed the record in this matter. Applicant resided about twenty-five miles from his place of employment and for his convenience in getting to and from his employment used his own pick-up truck. He

received mileage for his use at $.10 per mile. which was paid from the employer's shop when he reported there, or, from the job site if it was more convenient for him to go to work directly from his home. His mileage was paid back to the shop when his work concluded, or, to the last job site, if his work day was finished there. He did not receive any wages for travel time. If he made sales after his regular scheduled working hours, he received a commission but apparently did not do very much of this, since there is only one commission paid to him in the year 1966. He testified to only one other attempt to sell equipment. Applicant was reimbursed by his employer in accordance with the statement he gave to the latter. On the day of his injury, applicant's expense statement showed he traveled fifty-three miles in the course of his work. He did not claim, nor was he paid for mileage traveled to and from his home. We are persuaded by the evidence in the record that applicant was not engaged in any activity on behalf of his employer at the time he was injured in the accident and that his injury did not arise out of and in the course of his employment.''

Applicant contends that the evidence does not sustain the findings and decision of the board and that, in any event, the board erroneously applied the ''going and coming'' rule to the facts of the case established by the evidence. He contends that the primary factor here is not whether he was reimbursed by his employer for the cost of transportation, but rather that the controlling factor is that at the time of the accident he was serving his employer by providing a vehicle which was necessary for his travels in performing his work and in hauling and safeguarding his employer's equipment used in performing that work. He points out that the truck was, in effect, a mobile shop and, thus, an instrumentality of his employment, and that his injury resulted from the use of this instrumentality. We agree.

■ ''It is the general rule that injuries sustained by an employee going to or returning from work are not compensable under the Workmen's Compensation Act. The rule is premised on the theory that ordinarily the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work.'' (*Kobe* v. *Industrial Acc. Com.*, 35 Cal.2d 33, 35 [215 P.2d 736].) However, as the court observed in *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.*, 66 Cal.2d 944, 947 [59 Cal.Rptr. 622, 428

474

P.2d 606] : "Since the going and coming rule rests upon the basis that the employer-employee relationship lapses during the employee's off-duty absence from the job, the rule does not apply in the event that the relationship in fact continues." Thus, numerous exceptions to the general rule have been recognized where the circumstances show that the journey itself is considered a part of the job. For example, it is well settled that a traveling salesman who has unlimited territory or hours of work is in the course of his employment from the time he leaves home on a business trip until he returns. (*California Cas. Indem. Exchcnage* v. *Industrial Acc. Com.*, 5 Cal.2d 185 [53 P.2d 758].) The self-evident justification for this rule is that the travel itself is a large part of his job. By the same token the "special mission" exception to the general rule is applicable in a case where the evidence shows that the employee was making a trip to or from his home at the direction of the employer for some purpose other than to report to his routine work assignment at the scheduled time. (*Schreifer* v. *Industrial Acc. Com.*, 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832].)

The exceptions to the rule which have been recognized upon a showing that the employer furnished transportation to the worker, or compensated him for travel time, or defrayed his travel expenses appear to be based upon the same justification. ▪ As the court said in the *Kobe* case, *supra,* 35 Cal.2d at page 35: "[T]he employer may agree, either expressly or impliedly, that the [employment] relationship shall continue during the period of 'going and coming,' in which case the employee is entitled to the protection of the act during that period." (To the same effect, see *California Cas. Indem. Exchange* v. *Industrial Acc. Com.*, 21 Cal.2d 461 [132 P.2d 815]; *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd*, 66 Cal.2d 944, 947 [59 Cal.Rptr. 622, 428 P.2d 606].)

The "going and coming" rule and its numerous exceptions reflect a continuing attempt to establish a rule applicable to each of the many factual situations which appear in the cases. This, of course, is an impossible task and the "going and coming" rule and the established exceptions are by no means a comprehensive statement of the law, nor can they be mechanically applied. It does not follow that the general rule applies in every situation where an established exception to the rule is inapplicable. The question is whether the evidence shows an agreement that the employment relationship continue during the journey.

In *Lane* v. *Industrial Acc. Com.,* 164 Cal.App.2d 523 [331 P.2d 99], it was held that the circumstances compelled an inference that the employer agreed that the employment relationship should continue during the time that lumber company employees were traveling toward their homes in a pickup truck owned and driven by one of them. The controlling facts in that case are similar to those here. A lumber company employed "fallers" on a piecework basis. The fallers worked an 8-hour day from 7 until 3:30. Under their contract of employment they were required to furnish their own working equipment which consisted of gasoline powered chain saws, axes, wedges, hand tools and gasoline to power the saws. As a part of the contract of employment the company rented the chain saws from the fallers at a rate of 50 cents per 1,000 board feet cut during straight time employment. Customarily the fallers transported their tools and gasoline to the area to be worked by them. It appeared that the company furnished all other woods employees with transportation in a company-owned truck but the fallers furnished their own transportation because of the fact that they had to transport their power-driven saws and gasoline, and under a safety order gasoline could not be transported in a truck used to haul employees. On a particular day a group of fallers finished their work at a particular site about 2:30 p.m. They loaded up their trucks with their equipment and gasoline cans and started toward Susanville and their respective homes. They had been instructed to go to a new site the next morning and intended to take the equipment to the new site in the morning. Their truck struck a large deer on the road toward Susanville causing an accident which resulted in injuries to each of them. Since they were paid on a piecework basis, it was clear that their pay had ceased for the day and they had left the job site.

The court reasoned (p. 527) that certainly the employer never contemplated harvesting timber without the use of the saws, etc.; nothing would support an inference that the saws were not a usual and necessary part of the logging operation. It then said: "We think the use and care of this equipment was an integral part of the total service to the employer being rendered by petitioners. We think also that when at the end of the Hog Flat operation the fallers were ordered to report on the next day to the Worley Mountain site, the transportation by them of their equipment from the old site to the new was service rendered to the employer. . . . The fact that they

were to go home and go to the new site with the equipment on the following day does not militate against the proposition that in transporting the equipment from the old to the new site they were performing a service for the employer incidental to their employment and contemplated by employment conditions. Where an employee although going to his home at the time of his injury is at the time and within the usual hours of employment performing a service for his employer contemplated by the conditions of his employment he is not subject to the going and coming rule which assumes as a necessary basis for its application that the relationship of employer and employee has ceased when the employee has finished his work for the day and has left the premises of his employer. Here the record discloses, without dispute, that these conditions had not arisen."[2]

█ In the present case the evidence establishes without dispute that the applicant was on his way home in his own truck, that he received no express payment for the time spent traveling between his last job site and his home, and no reimbursement for his travel expenses between the last job site and his home. At the same time it is established by the very nature of the employer's business that the truck with its contents was a necessary instrumentality of that business. Certainly the employer did not contemplate the installation and servicing of air conditioning and heating equipment on customers' premises without a vehicle to transport a service man, tools, and equipment. Certainly the employer did not contemplate that applicant would leave the truck and its contents at the

---

[2]In contrast to the case just discussed, *Postal Tel. Cable Co.* v. *Industrial Acc. Com.*, 1 Cal.2d 730 [37 P.2d 441, 96 A.L.R. 460], upheld the denial of compensation to a telegraph messenger who was required to furnish his own motorcycle and bring it with him to work. Witkin, in volume 2 of his Summary of California Law, page 1706, makes the following comment: "The transportation exception may not apply if the vehicle is owned by the *employee*. In *Postal Tel. Co.* v. *Ind. Acc. Com.* (1934) 1 C.2d 730, 37 P.2d 441, an employee was required to report for work daily with his own motorcycle, but was furnished no garage and therefore kept it at home. *Held*, injuries incurred while driving to work were not compensable, under the going and coming rule. (See 23 Cal. L. Rev. 366; 9 So. Cal. L. Rev. 63.) On principle it is difficult to distinguish this situation from those in which the employer furnishes necessary transportation, for here, although the employee owned the vehicle, the conditions of his employment required that he go each day to the place where it was kept and ride it to work. The risk might, under such circumstances, be deemed incident to the employment. (See dissent; and cf. *Trussless Roof Co.* v. *Ind. Acc. Com.*, *supra*, [(1931) 119 Cal. App. 91, (6 P.2d 254)] where employer was held liable because he met the expenses of transportation, though the automobiles were owned by the employees.)"

job site when it came time to quit for the day. In our opinion the only reasonable inference to be drawn is that the use and care of the truck and its contents, including the journey from the job site at the end of the day, comprises an integral part of the total service to the employer. The employer-employee relationship existed at the time of the accident. The ''going and coming'' rule has no application.

The order of the board denying applicant's claim is annulled and the case is remanded to the board for further proceedings consistent with the views expressed in this opinion.

Ford, P. J., and Cobey, J., concurred.