Filed 11/15/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ISREAL HERNANDEZ et al., | C084350 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2013-00153842-CU-OE-GDS) |
| v. | |
| PACIFIC BELL TELEPHONE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Kevin R. Culhane, Judge. Affirmed.

Righetti Glugoski, Matthew Righetti and John Glugoski for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Thomas R. Kaufman, Paul Berkowitz; Mayer Brown, Donald M. Falk; AT&T Services and Laurie E. Barnes for Defendant and Respondent.

Jones Day, George S. Howard, Jr., Cindi L. Ritchey, and Victoria E. Cho for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Respondent.

1

Plaintiffs are class representatives of current and former employees of defendant Pacific Bell Telephone Company who install and repair video and internet services in customers' homes. They appeal a judgment in favor of defendant following cross-motions for summary judgment or summary adjudication. Plaintiffs sought compensation for the time they spent traveling in an employer-provided vehicle--loaded with equipment and tools--between their homes and a customer's residence (the worksite) under an optional and voluntary Home Dispatch Program.

The trial court, like federal courts that have considered the question under California law, concluded the travel time is not compensable.

We agree and affirm. First, the Home Dispatch Program is not compulsory; because the plaintiffs here were *not required* to use the company vehicle to commute to work, they were not under the control of the employer. Further, simply transporting tools and equipment during commute time is not compensable work where no effort or extra time is required to effectuate the transport.

**FACTUAL AND PROCEDURAL BACKGROUND**

Pacific Bell provides U-verse services in California. U-verse allows customers to obtain video and high-speed internet services in their homes. Premises technicians (technicians), who are paid on an hourly basis, install and repair U-verse products at the customers' homes. Technicians may not use their own vehicles while on the job; instead, they must use a company vehicle. They must take with them in the company vehicles all necessary equipment and tools to perform their job. The scheduled work day begins at 8:00 a.m. and lasts eight hours.

Before 2009 all technicians picked up company vehicles loaded with the equipment and tools necessary for U-verse installation and repair at a Pacific Bell garage. The work day began at the garage; technicians were paid for the time elapsed between pick up of the company vehicle at the garage and arrival at the first worksite. They were

2

also paid for the time spent driving back to the garage from the final worksite at the end of the day.

In 2009 Pacific Bell began the Home Dispatch Program (HDP), which allowed technicians to take a company vehicle home each night instead of returning all vehicles to the Pacific Bell garage. Participation in the HDP is optional. Under the program, technicians drive the company vehicles, containing tools and equipment, to and from home each day. Technicians must be at the first worksite by 8:00 a.m. and they are not paid for any time before 8:00 spent driving from their homes to the first worksite. As a general rule, they are not paid for the time spent driving home with the equipment and tools after their last appointment. Technicians in the HDP make one visit a week to the Pacific Bell garage to load the equipment and tools needed for the week. They are paid for this driving and loading time. They may not leave equipment and tools at a worksite or at the Pacific Bell garage; they must take it home with the company vehicle. Technicians who elect not to participate in the HDP are compensated for time spent traveling to and from the Pacific Bell garage, as was the norm before the HDP was available.

Israel Hernandez and Larry Michael Sharp brought a class action, on behalf of all Pacific Bell premises technicians. The complaint alleged plaintiffs and the class were not paid for all the time they were under Pacific Bell's control, because they were not paid for the time they were transporting equipment and tools in a company vehicle to and from the first and last jobs and for the time required to safeguard the equipment and tools. The complaint stated three causes of action--failure to pay the minimum wage, failure to pay wages timely, and unfair business practices--all based on the failure to pay for the transporting time. The court certified the class except for the safeguarding equipment claim.

The parties filed cross motions for summary judgment or summary adjudication on the class claims. [1] They stipulated to undisputed facts about the HDP, as set forth *ante.* Plaintiffs offered additional facts, including some about the HDP. Under the HDP, technicians could use the company vehicle *only* for company business, and only authorized persons could ride in or drive it. Technicians could not stop on the way to or from a customer's house to run errands or drop off or pick up children from school. They could not talk on a cell phone while driving, even before it was against the law to do so.

Plaintiffs also requested judicial notice of various advice letters of the Labor Department Division of Labor Standards Enforcement (DLSE) and the trial court granted the request. In particular, one DLSE opinion letter responded to a question about whether certain commute time was compensable. (Cal. Dept. Industrial Relations, DLSE Counsel H. Thomas Cadell, advice letter, "Travel Time Pay for Employee with Alternative Worksites" (Apr. 22, 2003) (Cadell letter).) The employee in question resided in Bakersfield, had alternate worksites in Bakersfield and Palmdale, and did not transport any significant materials between worksites. The employer asked if the commute to Palmdale was compensable time. (*Id.* at p. 1.) In discussing the factors to consider, the response noted that if the travel involved the employee's being required to deliver any equipment, goods, or materials for the employer, the travel time would be compensable. (*Id.* at p. 3.)

Pacific Bell argued that commuting in an employer-provided vehicle was compensable under California law only if such commuting was mandated, whereas participation in the HDP was optional and voluntary. It further argued the remaining class claims were derivative of the first and therefore also failed. Plaintiffs argued that

---

[1] Pacific Bell had previously moved for summary judgment. The trial court denied the motion because it did not address the claim for safeguarding equipment.

where employees transport the employer's equipment and tools, what is ordinarily commute time becomes compensable work time.

The trial court granted Pacific Bell's motion for summary judgment and denied plaintiffs' motion. In a subsequent order, the court modified its ruling to grant only summary adjudication on the class claims as the individual claims remained. The parties stipulated to dismiss the individual claims. The court entered judgment for Pacific Bell.

Plaintiffs appeal.[2]

## DISCUSSION

### I

### *Hours Worked*

Plaintiffs contend the time a Pacific Bell technician who participates in the HDP spends traveling from that technician's home to a worksite in a company vehicle, carrying equipment and tools, and the time traveling home from the final appointment at the end of the work day is compensable "hours worked."

The Industrial Welfare Commission (IWC) "is the state agency empowered to formulate regulations (known as wage orders) governing employment in the State of California." (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 561.) The IWC has promulgated 15 industry and occupational wage orders covering certain industries and occupations. (*Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 581 (*Morillion*).) Although neither party specifies the wage order at issue here, all 15 of the industry and occupational wage orders contain the same definition of "hours worked." (*Ibid.*) Wage Order No. 4-2001 appears to be the applicable wage order as it covers professional, technical, clerical, mechanical, and similar occupations. (Cal. Code Regs., tit. 8, § 11040.) It defines "hours worked" to mean "the time during which an employee

---

[2] On appeal we also consider the amici curiae brief of Employers Group and California Employment Law Council, filed in support of Pacific Bell.

is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (*Id.,* subd. (2)(G).) An employer must pay employees for all hours worked. (*Morillion,* at p. 578.)

The two phrases of the definition--"time during which an employee is subject to the control of an employer" and "time the employee is suffered or permitted to work, whether or not required to do so"--establish independent factors that each define "hours worked." (*Morillion, supra,* 22 Cal.4th at p. 582.) "Thus, an employee who is subject to an employer's control does not have to be working during that time to be compensated under [the applicable wage order]." (*Ibid*.) The time an employee is "suffered or permitted to work, whether or not required to do so," includes time the employee is working but not under the employer's control, such as unauthorized overtime, provided the employer has knowledge of it. (*Id*. at pp. 584-585.)

Plaintiffs contend the travel time between home and the customer's residence meets both of these tests. Because the facts are not in dispute, this is a question of law we review de novo. (*Building Industry Association of the Bay Area v. City of San Ramon* (2016) 4 Cal.App.5th 62, 73.)

## II

### *The Control Test*

Plaintiffs contend that under the circumstances seen here, the travel time to and from the technician's home and worksite satisfies the control test. Plaintiffs focus on the numerous restrictions placed on technicians under the HDP. Under the HDP, technicians can use the company vehicle only for company business and only authorized persons can ride in or drive the vehicle. Technicians must drive directly between home and the worksite; they are not permitted to stop along the way to run errands or drop off or pick up children from school or talk on a cell phone while driving.

Plaintiffs contend this level of control is similar to that found sufficient to satisfy the control test in *Morillion, supra,* 22 Cal.4th 575. There, Royal, the employer of

6

agricultural employees, "required [them] to meet for work each day at specified parking lots or assembly areas. After [the employees] met at these departure points, Royal transported them, in buses that Royal provided and paid for, to the fields where [the employees] actually worked. At the end of each day, Royal transported [the employees] back to the departure points on its buses. Royal's rules prohibited employees from using their own transportation to get to and from the fields." (*Id*. at p. 579.) If an employee drove to the fields rather than riding Royal's bus, the employee would be warned the first time and sent home with loss of a day's pay the second time. (*Id*. at p. 579, fn. 1.)

The issue before the Supreme Court was whether the time the employees spent traveling on Royal's buses constituted "hours worked" under the governing IWC wage order. (*Morillion, supra,* 22 Cal.4th at p. 578.) That wage order defined "hours worked" as set forth *ante*: the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so. Our high court rejected an argument that to constitute "hours worked" the time must be spent actually working. Instead, the court held that as long as the employee is "subject to the control of an employer," the time is considered compensable "hours worked." (*Id*. at pp. 582-584.)

The *Morillion* court then considered whether the employees were under the control of Royal while on the bus. (*Morillion, supra,* 22 Cal.4th at p. 586.) Although the employees could read or sleep on the bus, they could not use the time for their own purposes; they "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation." (*Ibid*.) For example, "during the bus ride [the employees] could not drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car." (*Ibid*.)

The Supreme Court concluded, "When an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own

7

transportation, these employees are 'subject to the control of an employer,' and their time spent traveling on the buses is compensable as 'hours worked.' " (*Morillion, supra,* 22 Cal.4th at p. 586.) "[W]e find that plaintiffs' compulsory travel time, which includes the time they spent waiting for Royal's buses to begin transporting them, was compensable. Royal required plaintiffs to meet at the departure points at a certain time to ride its buses to work, and it prohibited them from using their own cars, subjecting them to verbal warnings and lost wages if they did so. By ' "direct[ing]" ' and ' "command[ing]" ' plaintiffs to travel between the designated departure points and the fields on its buses, Royal ' "control[led]" ' them within the meaning of 'hours worked.' " *(Id.* at p. 587.)

The court was clear to "emphasize that employers do not risk paying employees for their travel time merely by providing them transportation. Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.' [Citation.] Instead, by requiring employees to take certain transportation to a work site, employers thereby subject those employees to [their] control by determining when, where, and how they are to travel. Under the definition of 'hours worked,' that travel time is compensable." (*Morillion, supra,* 22 Cal.4th at p. 588.)

The court then considered federal labor law, including both the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.) and the Portal-to-Portal Act of 1947 (29 U.S.C. § 251 et seq.). (*Morillion, supra,* 22 Cal.4th at p. 588.) It concluded that federal labor law "differs substantially" from state law and should be given no deference in interpreting California wage orders. (*Ibid.*) Nonetheless, the court noted that the Fifth Circuit's opinion in *Vega v. Gasper* (5th Cir. 1994) 36 F.3d 417 was consistent with its holding. (*Morillion,* at p. 589 & fn. 5.) In *Vega,* farm laborers furnished their own transportation to pick up points where the employer would then meet them and bring them, by a bus he provided, to the fields. The employees in *Vega,* however, "were not required to use [defendant's] buses to get to work in the morning. They chose . . . how to

8

get to and from work. Not all of [defendant's] field workers rode his buses." (*Vega,* at p. 425.) Our Supreme Court found "the fact that the *Vega* employees were free to choose--rather than required--to ride their employer's buses to and from work [to be] a dispositive, distinguishing fact." (*Morillion,* at p. 589, fn. 5.)

The rule of *Morillion* applies only where use of the employer-provided transportation is *compulsory*. This limited application is illustrated by *Overton v. Walt Disney Co.* (2006) 136 Cal.App.4th 263. There, the employer provided an off-site parking lot and free shuttle bus for employees assigned to certain work sites. Plaintiff sought compensation for the time spent waiting for and riding the shuttle. The appellate court held that time was not compensable. "[T]he key factor is whether Disney *required* its employees who were assigned parking in the [off-site] lot to park there and take the shuttle. Quite obviously, Disney did not." (*Id.* at p. 271.) An employee could use alternative forms of transportation, such as walking or biking the one-mile distance from the off-site parking lot, being dropped off at the employee entrance by family or a friend, or taking a vanpool (which were given preferential, closer parking), instead of riding the employer-provided shuttle. (*Id.* at p. 267.) "There is no indication that Disney employees were *required* to drive to work; nor is there any indication Disney employees understood that driving to work was mandatory. In fact, alternative forms of transportation were encouraged, and 10 percent of Disney employees took advantage of them." (*Id*. at pp. 271-272.)

Federal cases applying California law are in accord. In *Alcantar v. Hobart Serv.* (9th Cir. 2015) 800 F.3d 1047, an employee sought compensation for time spent driving an employer-provided truck to and from home, claiming he was subject to the employer's control within the definition of "hours worked" because he could not attend to personal errands while driving that vehicle. The Ninth Circuit reversed a summary judgment in favor of the employer because there was a genuine dispute of fact as to whether there existed a de facto requirement that employees commute in their employer's vehicle.

There was a factual dispute because the employer provided insufficient parking space to securely store the vehicles at its facility and held employees liable for the loss of any of the equipment kept in those vehicles. (*Id.* at p. 1055.) The appellate court announced that to prevail at trial, the plaintiff "must prove not only that Hobart's restrictions on him during his commute in Hobart's vehicle are such that he is under Hobart's control, but also that, despite Hobart's profession that use of its vehicles is voluntary, employees are, as a practical matter, required to commute in Hobart's vehicles." (*Id.* at pp. 1054-1055.)

A home-start program, similar to the HDP here, was at issue in *Novoa v. Charter Communications, LLC* (E.D.Cal. 2015) 100 F.Supp.3d 1013. The district court granted summary adjudication in favor of the employer on the employee's claim for commute time compensation because the employee "was given the option to either use his own vehicle to commute to one of Defendant's facilities to retrieve a company vehicle or keep a company vehicle at home each night. [Citation.] As a result of Plaintiff's election to keep a company vehicle at his home he was required to comply with Defendant's Vehicle Policy. Despite the restrictions that Defendant placed on Plaintiff's use of the company vehicle, its use to commute directly to the first job assignment was voluntary. Thus, the use of the vehicle to commute to and from home was not compensable." (*Id.* at p. 1021.) "Plaintiff has directed this Court to no case, and the Court's research has yielded no case, where an employee has been found to be subject to an employer's control where the plaintiff voluntarily elected to commute in the employer's vehicle." (*Ibid.*)

Plaintiffs here rely on *Rutti v. Lojack Corp.* (9th Cir. 2010) 596 F.3d 1046 to argue they were under control of Pacific Bell during the disputed commute time. In *Rutti*, the Ninth Circuit found the employee's commute time was compensable under California law because "Rutti was *required* to drive the company vehicle, could *not* stop off for personal errands, could *not* take passengers, was required to drive the vehicle *directly* from home to his job and back, and could *not* use his cell phone while driving except that he had to keep his phone on to answer calls from the company dispatcher. In addition,

10

Lojack's computerized scheduling system dictated Rutti's first assignment of the day and the order in which he was to complete the day's jobs. There is simply no denying that Rutti was under Lojack's control while driving the Lojack vehicle en route to the first Lojack job of the day and on his way home at the end of the day." (*Id.* at pp. 1061-1062.) The distinguishing fact in *Rutti* is that the Lojack employee was *required* to use the company vehicle; here, plaintiffs were not.

Plaintiffs distort Pacific Bell's argument that commute time under the HDP is not compensable because participation in the program is voluntary, arguing that they "cannot think of any situation since the abolition of slavery" where work is performed without agreement to do so, reasoning that *all* work is voluntary. They assert an employee may not volunteer to work without pay. But plaintiffs fail to address--or even acknowledge-- authority to the contrary. They do not address the cases such as *Overton, Alcantar,* and *Novoa* in which the courts found commute time in an employer-provided vehicle is not compensable when the employee is not required to use that transportation. Nor do they address the emphasis in *Morillion* on the compulsory nature of the transportation by bus or the court's observation "that employers do not risk paying employees for their travel time merely by providing them transportation. Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as 'hours worked.' " (*Morillion, supra,* 22 Cal.4th at p. 588.)

Commute time under the HDP is not compensable as "hours worked" under the control test.

### III

### *The Suffer or Permit to Work Test*

Plaintiffs contend the disputed commute time is also compensable as "hours worked" under the "suffered or permitted to work" definition. They argue they were working while driving to and from home because they were transporting tools and equipment that were necessary for them to do their job. At oral argument they

11

emphasized their theory that transporting equipment was distinguishable from merely transporting tools, as in their case some of the equipment (e.g., modems, cable boxes, and DVRs) was slated for *delivery* to the jobsite rather than merely designated for use at the site and meant to remain in the vehicles before and after use.

The phrase "suffered or permitted to work, whether or not required to do so" "encompasses a meaning distinct from merely 'working.' " (*Morillion, supra,* 22 Cal.4th at p. 584.) Our high court explained an employee is "suffered or permitted to work" when the employee is working, but not subject to the employer's control, such as unauthorized overtime when an employee voluntarily continues to work at the end of a shift with the employer's knowledge. (*Ibid.*)

In *Taylor v. Cox Communs. Cal., LLC* (C.D.Cal. 2017) 283 F.Supp.3d 881 [appeal filed Jan. 12, 2018], the district court considered whether commute time under an optional home start program, almost identical to the HDP here, was compensable.[3] The *Taylor* defendants argued plaintiffs' position had been rejected by courts applying federal law. (*Id.* at p. 889.) Recognizing that California and federal law differ, the district court turned to California law, but found the result was the same as under federal law.[4] (*Id.* at pp. 889-809.) Applying *Morillion,* the court concluded "the standard of 'suffered or permitted to work' is met when an employee is engaged in certain tasks or exertion that a manager would recognize as work. Mere transportation of tools, which does not add time or exertion to a commute, does not meet this standard." (*Id.* at p. 890.) We agree with this construction of the "suffer or permit to work" test.

---

[3] Although plaintiffs' counsel here was counsel for the plaintiff in *Taylor,* the plaintiffs' briefing does not mention the case.

[4] Plaintiffs appear to argue that since the laws differ, the result *must* also differ. But plaintiffs fail to show how the *Taylor* court's analysis of *Morillion* is incorrect.

Plaintiffs object to what they see as importing the federal "overt exertion" rule into California law. They contend this rule comes from the case *Reich v. New York City Transit Auth.* (2nd Cir. 1995) 45 F.3d 646. In *Reich,* the Second Circuit held commute time by police officers in the canine unit with their dogs was not compensable to the extent it did not involve either exertion or extra time. (*Id*. at pp. 651-652.)

Plaintiffs contend our Supreme Court rejected the "overt exertion" requirement in *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257. In *Augustus*, the court held state law prohibits on-duty and on-call rest periods because during required rest periods, "employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." (*Id.* at p. 260.) But *Augustus* does not support plaintiffs' position as it relied on the employer's control over the employee rather than the "suffer or permit to work" component. Indeed, the *Augustus* court defined "rest" as the " '[c]essation of work, exertion, or activity' " (*id.* at p. 265), thus suggesting a connection between work and exertion. We find nothing in *Augustus* that is inconsistent with *Taylor.*

In arguing that transporting equipment and tools in the Pacific Bell vehicle to customers' homes under the HDP constitutes "hours worked," plaintiffs rely on the Cadell letter of April 22, 2003, that the trial court judicially noticed. The letter stated: "[I]f the travel involved the employee being required to deliver any equipment, goods or materials for the employer, the travel, no matter how extended, would be compensable." The Cadell letter addressed whether an employee who alternated between two different worksites in Bakersfield and Palmdale was entitled to compensation for the time spent traveling to the more distant worksite. The letter did not explain what constituted delivery of equipment within its analysis, nor did it detail whether the delivery of equipment would include an employee using a company vehicle stocked with equipment pursuant to a voluntary commute program like the HDP. While the quoted language of the letter is broad, read in context it does not indicate *any and all* transportation of tools

13

or equipment is compensable time. For example, the letter also says a finish carpenter would not expect to be paid for the time he commutes to a jobsite. However, it appears to us that a finish carpenter would likely carry tools on his commute in order to adequately perform his job once reaching a worksite. Further, here the record reflects that the parties stipulated that "[t]echs on HDP are to be at the first customer appointment of the day at 8 a.m., and they begin to be paid at 8 a.m. They are not paid for the time before 8 a.m. *that they spend driving to the first appointment* with tools and equipment." (Italics added.) This stipulation fairly permits us to infer that plaintiffs here are paid for delivery and installation of any transported products beginning when they *arrive* at the jobsite, despite plaintiffs' suggestion at oral argument that they may be actually *delivering* equipment (rather than merely transporting tools and equipment to and from jobsites) without being paid to do so.

While DLSE advice letters are not subject to the rulemaking procedures of the Administrative Procedure Act, and thus have less force than regulations, courts follow them when they are persuasive. (*Morillion, supra,* 22 Cal.4th at p. 584.) They are, however, not entitled to any deference and we adopt the DLSE's interpretation only if we independently determine that it is correct. (*Gattuso v. Harte-Hanks Shoppers, Inc*. (2007) 42 Cal.4th 554, 563.) We do not find the "tangential and conclusory" statement in the advice letter persuasive on the question before us. (See *Estrada v. FedEx Ground Package System, Inc*. (2007) 154 Cal.App.4th 1, 25.)

Plaintiffs next rely on two workers compensation cases, *Joyner v. Workmen's Compensation Appeals Board* (1968) 266 Cal.App.2d 470 and *Lane v. Industrial Acc. Com.* (1958) 164 Cal.App.2d 523. These cases held that where an employee is injured in a traffic accident on his commute home, while carrying equipment for his job, the employer relationship continued such that the employee's injuries were compensable and not subject to the coming and going rule. (*Joyner,* at p. 476; *Lane,* at p. 527.) These cases address a different issue than the one before us and therefore we find them

14

inapposite. Further, we note that in both of these cases, the employee was not being paid by his employer for his commute time when the accident happened. (*Ibid*.)

Finally, plaintiffs rely on federal cases construing the Portal-to-Portal Act, even though that act contains an exemption for travel time missing from California law. (*Morillion, supra,* 22 Cal.4th at p. 590.) In *D A & S Oil Well Servicing, Inc. v. Mitchell* (10th Cir. 1958) 262 F.2d 552, the question was whether the time an employee spent driving a truck mounted with heavy, specialized equipment (30,000-pound pulling and swabbing units and 109-gallon tanks of butane gas) to the jobsite was compensable. The federal appellate court answered in the affirmative. "We hold that the driving of the trucks on which the units are mounted, and the driving of the pickups when used to transport necessary equipment, constitute activities which are an 'integral and indispensable' part of the principal activities of the employees doing the driving, and such services are therefore compensable." (*Id*. at p. 555.) In *Crenshaw v. Quarles Drilling Corp.* (10th Cir. 1986) 798 F.2d 1345, 1350, disapproved on another point in *McLaughlin v. Richland Shoe Co.* (1988) 486 U.S. 128, the court followed *D A & S* and found the time the employee spent traveling to job sites with a truck of specialized equipment to service drilling rigs was subject to overtime compensation. Here, plaintiffs argue that because premises technicians carry equipment and tools necessary to perform their jobs when they get to the worksites, their travel time should be compensable.

We are not persuaded. The cases cited by plaintiffs here do not involve mere commuting with necessary tools in tow; instead they involve the *delivery* of heavy, specialized equipment to the jobsite. The latter requires a far greater effort. Although here certain items may be slated for delivery at the end of the commute (and the corresponding beginning of the workday), as we have explained, here it also appears plaintiffs are indeed paid for the *acts of* delivering and installing the equipment. Further, carrying the items necessary to establish service in the situation seen here is simply not a comparable effort. There is a significant difference between transporting heavy

15

equipment for servicing oil wells and the incidental transporting of equipment and tools seen here. We agree with this observation by a federal district court: "To the extent that some of these cases state broadly that travel time is compensable if employees are transporting equipment without which their jobs could not be done, e.g., *Crenshaw*, 798 F.2d at 1350, I read these statements as implying that the transportation involves some degree of effort. Otherwise, as observed earlier, the commutes of police officers who carry guns, or indeed, employees who carry badges, would always be compensable." (*Dooley v. Liberty Mut. Ins. Co*. (D. Mass. 2004) 307 F.Supp.2d 234, 248-249.) As Pacific Bell argues, if carrying equipment necessary for the job were always compensable, every employee who carries a briefcase of work documents or an electronic device to access work emails to and from work would need to be compensated for commute time.[5]

Commute time under the HDP is not compensable as "hours worked" under the "suffer or permit to work" test. The trial court did not err in granting summary judgment to Pacific Bell.

---

[5] We note that *loading* the truck with tools and equipment at the Pacific Bell garage is compensable time under the HDP.

16

## DISPOSITION

The judgment is affirmed.  Pacific Bell shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)

                                                                 /s/
                                                            Duarte, J.

We concur:

  /s/
Butz, Acting P. J.

  /s/
Murray, J.

17