Filed 6/2/20; Certified for Publication 6/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL OLIVER et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,<br><br>    Defendant and Respondent. | H045069<br>(Santa Clara County<br>Super. Ct. No. 2014-1-CV-263183) |

## I. INTRODUCTION

In this wage and hour class action, plaintiffs Michael Oliver and Norris Cagonot represented a class of service technicians (collectively, plaintiffs) who were employed by defendant Konica Minolta Business Solutions U.S.A., Inc.[1]  Service technicians were required to drive their personal vehicles, which contained defendant's tools and parts, to customer sites to make repairs to copiers and other machines.  Service technicians did not report to an office for work.  Instead, service technicians usually drove from home to the first customer location of the day and, at the end of the day, from the last customer location to home.

Relevant here, plaintiffs in the class action sought wages for (1) time spent commuting to the first work location of the day and commuting home from the last work

---

[1] Defendant was named in the complaint as "Konica Minolta Business Solutions, USA."

location and (2) reimbursement for mileage incurred during those commutes.  The parties filed cross-motions for summary adjudication on the two issues.  The trial court determined that plaintiffs' commute time was not compensable as "hours worked" under Industrial Welfare Commission wage order No. 4-2001 (Wage Order No. 4; see Cal. Code Regs., tit. 8, § 11040, subd. 4(B)).  Wage Order No. 4 defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." (Cal. Code Regs., tit. 8, § 11040, subd. 2(K).)  The court further determined that plaintiffs were not entitled to reimbursement for commute mileage under Labor Code section 2802,[2] which requires an employer to indemnify an employee "for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  On appeal, plaintiffs contend that the trial court erred in granting defendant's summary adjudication motion.

In determining whether the trial court properly found in favor of defendant on the issue of compensability of commute time, we are guided as an intermediate court by the legal principles set forth by the California Supreme Court in *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575 (*Morillion*).  (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*).)  In *Morillion*, employees were required to travel to the worksite in employer-paid buses.  (*Morillion*, *supra*, at p. 579.)  The California Supreme Court indicated that commute time to and from work is generally not compensable.  (*Id.* at p. 587.)  Further, if the employer provides "optional free transportation" to employees, the employer is not obligated to compensate employees for commute time.  (*Id.* at p. 594; see *id.* at p. 588.)  On the other hand, "compulsory travel time" is compensable.  (*Id.* at p. 587.)  The court explained that the "level of the employer's control over its employees . . . is determinative." (*Ibid*.)  While commuting,

_____

[2] All further statutory references are to the Labor Code unless otherwise indicated.

2

employees must be able "to use 'the time effectively for [their] own purposes.' " (*Id.* at p. 586.) Because the employees in *Morillion* "were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the [worksite] by their own transportation" (*id.* at p. 586), the court determined that they were " 'subject to the control' " of the employer and entitled to wages for the time travelling on the buses to the worksite (*id.* at p. 578).

Here, we determine that if carrying tools and parts in a service technician's personal vehicle during the commute was optional, then the service technician was not "subject to the control of [defendant]" for purposes of determining whether that time constituted "hours worked." (Cal. Code Regs., tit. 8, § 11040, subds. 2(K), 4(B); see *Morillion*, *supra*, 22 Cal.4th at p. 594.) Further, even if a service technician was required—"strictly speaking" or "as a practical matter"—to carry tools and parts during the commute, the service technician would not be "subject to the control of [defendant]" during the commute if the service technician was able "to use 'the time effectively for [the service technician's] own purposes.' " (*Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1054 (*Frlekin*); Cal. Code Regs., tit. 8, § 11040, subd. 2(K); *Morillion*, *supra*, at p. 586.) On the other hand, if a service technician was required during the commute to carry a volume of tools and parts that did "not allow [the service technician] to use 'the time effectively for [the service technician's] own purposes," then the technician would be "subject to the control of [defendant]" for purposes of determining "hours worked" and entitlement to wages. (*Morillion*, *supra*, at p. 586; Cal. Code Regs., tit. 8, § 11040, subds. 2(K) & 4(B).)

Based on the record in this case, we determine that there are triable issues of material fact regarding (1) whether service technicians were subject to defendant's control during their commute such that their commute time constituted "hours worked" for which wages must be paid, and (2) whether service technicians were entitled to reimbursement for commute mileage. (Cal. Code Regs., tit. 8, § 11040, subd. 4(B); see

3

*id*., § 11040, subd. (2)(K); § 2802.)  We will therefore reverse the judgment that was entered in defendant's favor.

## II. FACTUAL BACKGROUND

### A. *Service Technicians*

Defendant provided business printing, copying, and scanning products and services to customers.  Plaintiffs Oliver and Cagonot were employed by defendant as service technicians.  Service technicians maintained or repaired copiers or other devices at the customer's site, among other tasks.  The products serviced by the service technicians included different brands and types of machines.

### B. *Commuting to and from Home*

Defendant's customers were in different locations, and most service technicians did not report to the same location every day.  Service technicians usually drove from home to their first work location of the day.  Service technicians were expected to be at the site of their first call at 8:00 a.m.  Typically, the first or last work location of the day was a customer job site, but it also may have been one of defendant's branch locations, a field stocking location to pick up parts, or other "business stop."  At the end of the workday, the service technician usually drove from the last work location to home.  Service technicians were expected to leave their last location by 5:00 p.m.

### C. *Compensation for Time and Reimbursement for Mileage*

Service technicians were compensated for their regular work hours between 8:00 a.m. and 5:00 p.m., including time spent driving during that period.  Service

4

technicians were also reimbursed for all miles driven during their workday between their first and last work stops.

Defendant generally did not pay wages, or reimburse mileage, for commuting to the first call of the day, and commuting home from the last call of the day, when the commute was within the service technician's normal territory.[3]

However, if a service technician commuted to a branch location or a field stocking location to pick up parts before going to the first customer call of the day, the time and mileage *from* that branch or field stocking location *to* the first customer call was compensable and reimbursable.[4]

**D.** *Vehicle Requirement*

For a period, defendant provided company cars to its service technicians. Defendant eventually ended the company car program, and service technicians generally were required to drive non-company vehicles for work. "On-premise" technicians were assigned to only one customer and were not required to have a vehicle. On-premise technicians are not at issue in this case.

Regarding the type of vehicle, defendant's written driver policy states that service technicians "shall maintain a late-model vehicle in good repair and appearance with no less than twenty-five (25) cubic feet of lockable cargo space." The written policy also requires that the "vehicle have sufficient security for cargo space to carry parts and tools

---

[3] Defendant's written policy provided that if the technician's commute was beyond the technician's normal commute or territory, the technician was reimbursed for the additional commute time and mileage. However, some technicians were not aware of this policy.

[4] On appeal, plaintiffs contend that they started their workday at home by, among other tasks, responding to e-mails, checking the status of parts orders, confirming their schedule and route, checking the inventory in their vehicle, and loading any necessary parts into their vehicle. As we set forth *infra*, however, the parties stipulated that their cross-motions for summary adjudication were based on the technicians' commutes to and from "non-work site homes."

5

as needed. . . . Further, this space must be lockable and environmentally sound (i.e., dry, vented, etc.). This is especially important for drivers who wish to use pickup trucks where a rigid, lockable covering is expected to be securely mounted over the cargo bed area."

The purpose of requiring cargo space is because service technicians need "some amount of in-vehicle storage for the tools and materials associated with their job." Defendant believed that "25 cubic feet [was] a very comfortable space by which [service technicians] can hold their tools and anything else they need for the job."

Notwithstanding the written policy regarding a required minimum volume of cargo space, defendant never measured a service technician's vehicle. The types of vehicles driven by service technicians included a Honda Civic, Toyota Corolla, and Volkswagen Beetle, and some vehicles had as little as 11 to 14 cubic feet of cargo space.

Defendant did not have any policy restricting service technicians from using their personal vehicles for personal pursuits during their commutes. For example, a service technician could have passengers or run errands during the commute.

### E. *Storage and Carrying of Tools and Parts*

Defendant supplied the tools that service technicians needed to work on the machines. The tools included a laptop, a small vacuum cleaner,[5] a hand cart, and a service case containing hand tools such as screwdrivers, pliers, and wrenches. Service technicians could decide which tools to carry in their vehicle. Some service technicians worked on multiple machines, so they carried all the tools provided by defendant in their car.

In addition to tools, defendant provided service technicians with the parts they needed to service customers' machines. Defendant's written inventory guidelines provided that each service technician had a target of carrying 150 to 250 "[u]nique items"

---

[5] The vacuum was one foot long by six to eight inches tall.

with a value of $9,000 to $14,000. However, that same document indicated that each service technician was "different and determining what parts to carry can be difficult."

Regarding storing parts, defendant's written policy states: "Generally all parts must be maintained in the vehicle a service technician uses to travel between service calls. Any exceptions to this policy must be manager-pre-approved, and most often involve storage of at least some parts at a [defendant] or customer facility. The storage of parts in a person's residence or other non-approved location is strictly forbidden." Defendant thus expected service technicians "to have in their vehicle . . . the tools and parts required to support their customers." In particular, the "primary inventory" assigned to a service technician was "expected to be" in the service technician's vehicle.

Defendant allowed many service technicians to store parts at a "field stocking location," which could be a self-storage facility, a branch office, or a customer location. Some service technicians were given the discretion to decide where they stored their parts between the various locations and when to visit the location. Many service technicians stored larger or seldom-used parts in the field stocking location and carried smaller, more commonly-used parts in their vehicles. Other service technicians, however, did not have a field stocking location available to them to store parts and/or were told to carry most of the parts, or as many of the parts as reasonably possible, that were assigned to them. At a minimum, however, service technicians were generally expected to take with them the tools and parts they reasonably expected to use on their next prescheduled customer visit.

Defendant's written "Field Parts Inventory Practice Guide" states that stock in a vehicle "should be . . . organized" and "easy to locate." (Some capitalization omitted.) "Trunk stock inventory" must "be stored in a vehicle," and "[p]arts should be properly secured in a locked vehicle." "These items should not be stored elsewhere such as the employee's house or garage." Likewise, parts stored at a customer's location must be "stored in a secure location."

7

Service technicians may also have certain items that defendant categorized as "do not count" (DNC) items. "DNC items include screws, washers, grease, lubricant, vacuum filters, manuals, test charts, tools, etc." "DNC items are counted as zero during the physical inventory process." Regarding storing DNC items, or carrying them in the service technician's vehicle, it is not clear from the record that DNC items were treated any differently than other parts in the service technician's inventory.

Several service technicians described the amount of space that the tools and parts occupied in their vehicle. For example, one service technician, who drove an Audi TT coupe and who did not have a parts storage location, kept almost all assigned parts in his vehicle. The service technician folded down the back seats to maximize trunk space. The items he carried in his car included tools, a foldable handcart, cleaning materials, and two "Rubbermaid type" containers with small parts.

Another service technician drove a Corolla. His trunk and back seat were "full" of tools and parts. At times, there were so many boxes in the back seat that he could not see out the back window.

One service technician stated in a declaration that he "routinely carried . . . at least 400 pounds of equipment and tools" in his van. He stored larger parts in a storage locker. The service technician testified at a deposition that "[e]veryone's car was packed to the top." They had to carry "a bunch of parts," and they "couldn't fix stuff if [they] didn't."

Another service technician stated in a declaration that he folded down his back seats, and that the tools and parts issued to him took up the entire back seat area. His "car was typically so filled with parts that [he] couldn't see out of [his] rear view mirror." Larger items that would not fit in his car were kept in defendant's storage locations.

**F.** *Audit and Evaluation of Service Technicians*

Defendant's written "Field Parts Inventory Practice Guide" describes "20 / 20 Inventory Audits" in which 20 random items are chosen, and the service technician is given 20 seconds to produce each item from the trunk. (Some capitalization omitted.)

8

The audit is described in writing by defendant as "a good tool to use throughout the year to test the usability of the [service technician's] trunk stock" and as "promot[ing] good trunk organization." Notwithstanding the written description of the audit as giving the service technician 20 seconds to find each item in the trunk, there is evidence in the record that the part could properly be stored in a field storage location or a customer location.

Service technicians were evaluated based on various criteria, which may include a "first time fix" or "first call completion" rate. Under this criterion, service technicians were evaluated on their ability to fix the customer's problem the first time they visited the customer. "[P]art of the way that technicians satisf[ied] this requirement [was] having the proper parts with them in their personal vehicles when they get to the customer location." The first-time fix percentage that defendant expected from service technicians was at least 89 percent.

A service technician may also be evaluated by "calls per day." Under this criterion, defendant had a certain number of calls per day that it expected the service technician to meet. Eventually, defendant began focusing on a "call duration" metric, which was based on the amount of time the service technician spent on each call. Both these metrics—calls per day and call duration—were based on the type of machine the service technician worked on and the national average for time to repair that machine.

### III. PROCEDURAL BACKGROUND

#### A. *The Complaint and Class Certification*

In 2014, plaintiff Oliver filed a putative class action complaint alleging three causes of action against defendant: (1) failure to pay overtime wages pursuant to section 1194 and failure to provide accurate wage statements as required by section 226, (2) failure to reimburse for work related expenses in violation of section 2802, and (3) violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). The causes of action were based on defendant's (a) failure to pay service technicians for

9

time spent driving personal vehicles to the first job of the day, and from the last job of the day, while transporting tools and equipment necessary to do their jobs, (b) failure to reimburse service technicians for the miles driven during those trips, and (c) failure to provide wage statements listing that time as hours worked.

In early October 2015, on motion of plaintiff Oliver, the trial court certified a class of approximately 380 technicians with Oliver and Cagonot as class representatives.

In late October 2015, a first amended complaint was filed, adding Cagonot as a named plaintiff and adding a fourth cause of action for civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA; § 2698 et seq.). The PAGA claim was based on the Labor Code violations alleged in the other causes of action.

### B. *Cross-Motions for Summary Adjudication*

The parties each filed motions for summary adjudication. The trial court initially denied the motions on procedural grounds because the issues raised by the parties were not matters that could be summarily adjudicated. (See Code Civ. Proc., § 437c, subd. (f)(1) [a party may seek summary adjudication of a cause of action, affirmative defense, a claim for damages, or an issue of duty].)

At the trial court's invitation, the parties filed a stipulation pursuant to Code of Civil Procedure section 437c, subdivision (t),[6] requesting that the court adjudicate the following two issues that were presented in their cross-motions for summary adjudication: (1) "Based on the record evidence, is [d]efendant legally obligated . . . to pay class members wages for the time spent driving their personal vehicles from their non-work site homes to the first work site of the day and from the last work site of the day back to their homes," and (2) "[b]ased on the record evidence, is [d]efendant legally obligated . . . to reimburse class members for the miles driven in their personal vehicles

---

[6] Code of Civil Procedure section 437c, subdivision (t) allows a trial court, upon stipulation of the parties, to hear a motion for summary adjudication of a legal issue that does not completely dispose of a cause of action, affirmative defense, or issue of duty.

10

from their non-work site homes to the first work site of the day and from the last work site of the day back to their homes?"

### 1. Plaintiffs' Motion for Summary Adjudication

In plaintiffs' motion for summary adjudication, they contended that defendant required them to (1) drive their own personal vehicles and (2) transport tools and parts when they commuted to and from work. Plaintiffs argued that they were entitled to wages for time spent, and reimbursement for miles driven, during their commutes. Plaintiffs contended that California law provided for compensation under two circumstances: when an employee is subject to the employer's control, or when the employee is suffered or permitted to work regardless of whether the employee is required to do so. Plaintiffs argued that the court did not need to reach the first test regarding control because they were entitled to compensation under the latter test regarding suffered or permitted to work. In support of their contention that they were entitled to wages and reimbursement, plaintiffs relied on, among other authorities, an opinion letter from the Division of Labor Standards Enforcement (DLSE), workers' compensation cases, and cases applying federal law.

### 2. Defendant's Motion for Summary Adjudication

In its motion for summary adjudication, defendant contended that plaintiffs were not entitled to compensation and reimbursement for "normal commute time and . . . normal commute miles." Defendant argued that the presence of tools and parts in plaintiffs' vehicles did not "transform their ordinary commute into" worktime. Because plaintiffs were not subject to defendant's control or engaged in work-related tasks during their commute, and because plaintiffs did not incur expenses in direct consequence of the discharge of their duties, defendant contended that plaintiffs were not entitled to payment for time or mileage. Defendant argued that the various authorities cited by plaintiff, such as the DLSE opinion letter, the workers' compensation cases, and the cases arising under federal law were not persuasive authority in support of plaintiffs' contentions.

11

## C. *The Trial Court's Order*

The trial court granted defendant's motion for summary adjudication, and denied plaintiffs' motion for summary adjudication, on the issues of whether service technicians were entitled to (1) wages for time and (2) reimbursement for miles for driving between home and the first or last worksite of the day.

In a lengthy, thoughtful, and detailed order, the trial court determined that the service technician's commute time did not constitute " 'hours worked' " under either the " 'control' " test or the " 'suffer and permit' " test. Under the control test, the court found it undisputed that defendant did not control the service technicians' commute, as the service technicians were not required to take a particular route and could complete personal errands during the commute. Under the suffer and permit test, the court found that the service technicians' transportation of tools during their commutes did not transform their commutes into work. The court was unpersuaded by plaintiffs' reliance on the DLSE opinion letter or by workers' compensation cases and federal cases that applied a different legal standard and/or involved distinct factual circumstances. Having determined that the service technician's commute time did not constitute hours worked, the court concluded that service technicians were not entitled to reimbursement for miles driven during their commute.

## D. *The Judgment*

The trial court's ruling on the summary adjudication motions did not dispose of all of plaintiffs' claims in the operative pleading. Upon plaintiffs' request, the trial court dismissed a remaining section 2802 claim by plaintiffs regarding the insufficiency of the rate of reimbursement by defendant. A judgment was thereafter filed in favor of defendant on July 18, 2017, regarding plaintiff's causes of action for (1) failure to pay overtime and (2) failure to reimburse expenses, and the associated causes of action for (3) violation of the UCL, and (4) civil penalties under PAGA.

12

# IV.  DISCUSSION

Plaintiffs contend that the trial court erred in granting defendant's motion for summary adjudication on the issues of whether they were entitled to wages for time spent commuting and reimbursement for commute mileage.  In analyzing whether the trial court properly granted summary adjudication in defendant's favor, we first set forth the standard of review.  We then consider whether plaintiffs were entitled to wages for their commute time and whether they were entitled to reimbursement for commute mileage.

## A.  *The Standard of Review*

A party may move for summary judgment or, in the alternative, summary adjudication.  (Code Civ. Proc. § 437c, subds. (f)(1) & (2), (t)(5).)  A motion, such as in this case, under Code of Civil Procedure section 437c, subdivision (t) for summary adjudication of a legal issue that does not completely dispose of a cause of action, an affirmative defense, or an issue of duty "proceed[s] in all procedural respects as a motion for summary judgment."  (*Id.*, section 437c, subd. (t)(5).)

The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if [the movant] carries [this] burden of production," the burden of production shifts to the opposing party "to make a prima facie showing of the existence of a triable issue of material fact."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party."  (*Aguilar, supra*, 25 Cal.4th at p. 843.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p. 850, fn. omitted.)

13

"In reviewing a trial court's grant of summary judgment [or summary adjudication], . . . ' "[w]e take the facts from the record that was before the trial court when it ruled on that motion" ' and ' " ' "review the trial court's decision de novo . . . ." ' " ' " (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1039.)

**B. *Wages for "Hours Worked"***

California "wage and hour claims are . . . governed by two . . . sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of . . . wage orders, adopted by the [Industrial Welfare Commission (IWC)]." (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 (*Brinker*).) "The IWC's wage orders are to be accorded the same dignity as statutes." (*Id.* at p. 1027.) Both the wage orders and the wage and hour laws are "liberally construe[d] . . . to favor the protection of employees. [Citations.]" (*Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 262; accord *Brinker*, *supra*, at pp. 1026-1027.)

The wage orders specify the minimum requirements regarding wages, hours, and working conditions across entire industries or occupations. (*Brinker*, *supra*, 53 Cal.4th at p. 1026.) In this case, defendant relies on Wage Order No. 4, and plaintiffs do not dispute the applicability of this wage order.

Wage Order No. 4 requires an employer to pay employees the applicable minimum wage for all "hours worked." (Cal. Code Regs., tit. 8, § 11040, subd. 4(B).) " 'Hours worked' means the time during which an employee is subject to the *control* of an employer, and includes all the time the employee is *suffered or permitted to work*, whether or not required to do so." (*Id.*, § 11040, subd. 2(K), italics added.) "[T]he two phrases—'time during which an employee is subject to the control of an employer' and 'time the employee is suffered or permitted to work, whether or not required to do so' " are "independent factors, each of which defines whether certain time spent is compensable as 'hours worked.' " (*Morillion*, *supra*, 22 Cal.4th at p. 582; see *id.* at p. 584.)

14

At issue in this case is whether the commute by service technicians constitutes work for which defendant must pay wages. We therefore turn to whether there is a triable issue regarding whether service technicians' commute meets at least one of the factors defining hours worked, that is, the employee was subject to the "control of an employer" or the employee was "suffered or permitted to work." (Cal. Code Regs., tit. 8, § 11040, subd. 2(K)).

## 1. Employer Control

### a. General legal principles

"[C]ontrol of an employer" in the definition of " '[h]ours worked' " (Cal. Code Regs., tit. 8, § 11040, subd. 2(K)) has been interpreted to mean "when an employer 'directs, commands or restrains' an employee. [Citation.] Thus, '[w]hen an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control. . . . [T]hat employee must be paid.' [Citation.]" (*Morillion*, *supra*, 22 Cal.4th at p. 583; *see id.* at p. 586.) Likewise, when an employer requires a personal attendant employee to spend time at its premises, the time is considered " 'hours worked' " even though the employee performs no work and is allowed to sleep. (*Ibid.*) Indeed, " 'an employer, if [it] chooses, may hire a [person] to do nothing, or to do nothing but wait for something to happen. . . . Readiness to serve may be hired, quite as much as service itself . . . .' [Citations.])" (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840.) "Thus, an employee who is subject to an employer's control does not have to be working during that time to be compensated under [the wage order]. [Citations.]" (*Morillion*, supra, 22 Cal.4th at p. 582; see *id.* at p. 584.) The California Supreme Court has emphasized that "[t]he level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative" of whether an

15

activity is compensable under the control provision.  (*Id.* at p. 587; accord, *Frlekin*, *supra*, 8 Cal.5th at p. 1056.)

### b.  *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575

The California Supreme Court has indicated that commute time to and from work is generally *not* compensable.  (*Morillion*, *supra*, 22 Cal.4th at p. 587; *Frlekin*, *supra*, 8 Cal.5th at p. 1051.)  Further, if the employer provides "optional free transportation" to employees, the employer is not obligated to compensate employees for commute time if they are not required to use this transportation.  (*Morillion*, *supra*, at p. 594; see *id.* at p. 588.)  On the other hand, "compulsory travel time" *is* compensable.  (*Id.* at p. 587.)

The California Supreme Court applied these principles in *Morillion*.  In *Morillion*, the employer required its agricultural employees to meet at specified locations, where an employer-paid bus transported the employees to and from the fields where the employees worked.  (*Morillion*, *supra*, 22 Cal.4th at p. 579.)  The employees were prohibited from using their own transportation to get to and from the fields.  (*Ibid.*)

The California Supreme Court concluded that the employer was obligated to pay employees for the time travelling on the buses because the employees were " 'subject to the control' " of the employer.  (*Morillion*, *supra*, 22 Cal.4th at p. 578.)  The court explained that, "[b]y ' "direct[ing]" ' and ' "command[ing]" ' [the employees] to travel between the designated departure points and the fields on its buses, [the employer] ' "control[led]" ' them within the meaning of 'hours worked' under" the applicable wage order.  (*Id.* at p. 587.)  In other words, "by requiring employees to take certain transportation to a work site, employers thereby subject those employees to its control by determining when, where, and how they are to travel.  Under the definition of 'hours worked,' that travel time is compensable.  [Citations.]"  (*Id.* at p. 588.)

The California Supreme Court further explained that "[p]ermitting [employees] to engage in limited activities such as reading or sleeping on the bus does not allow them to use 'the time effectively for [their] own purposes.'  [Citation.]"  (*Morillion*, *supra*,

16

22 Cal.4th at p. 586.) For example, "during the bus ride [the employees] could not drop off their children at school, stop for breakfast before work, or run other errands requiring the use of a car. [The employees] were foreclosed from numerous activities in which they might otherwise engage if they were permitted to travel to the fields by their own transportation. Allowing [employees] the circumscribed activities of reading or sleeping does not affect, much less eliminate, the control [the employer] exercises by requiring them to travel on its buses and by prohibiting them from effectively using their travel time for their own purposes. Similarly, . . . listening to music and drinking coffee while working in an office setting can also be characterized as personal activities, which would not otherwise render the time working noncompensable." (*Ibid.*)

The California Supreme Court disagreed with the employer's argument that such an interpretation of " 'hours worked' " was "so broad that it encompasses all activity the employer 'requires,' including all commute time, because employees would not commute to work unless the employer required their presence at the work site, and all grooming time, because employees might not, for example, shave unless the employer's grooming policy required them to do so." (*Morillion*, *supra*, 22 Cal.4th at p. 586.) The court explained that the employer did "not consider the level of control it exercises by determining when, where, and how plaintiffs must travel. In contrast to [the agricultural employees at issue before the court], employees who commute to work on their own decide when to leave, which route to take to work, and which mode of transportation to use. By commuting on their own, employees may choose and may be able to run errands before work and to leave from work early for personal appointments. The level of the employer's control over its employees, rather than the mere fact that the employer requires the employees' activity, is determinative. [Citations.]" (*Id.* at pp. 586-587.)

The California Supreme Court was also not persuaded by the employer's argument that " 'the commute was something that would have had to occur regardless of whether it occurred on [the employer's] buses, and [the employees] point to no particular detriment

17

that ensued from riding the [employer's] buses.' " (*Morillion*, *supra*, 22 Cal.4th at p. 587.)  The court explained that this argument "fail[ed] to distinguish between travel that the employer specifically compels and controls, as in this case, and an ordinary commute that employees take on their own.  When an employer requires its employees to meet at designated places to take its buses to work and prohibits them from taking their own transportation, these employees are 'subject to the control of an employer,' and their time spent traveling on the buses is compensable as 'hours worked.'  [Citation.]" (*Ibid.*)

Because the California Supreme Court determined that the employees were "subject to the control of" their employer while traveling on the employer's bus, the court did not reach the alternative question of whether the employees were "suffered or permitted to work" during that travel period (Cal. Code Regs., tit. 8, § 11140, subd. 2(G)).  (*Morillion*, *supra*, 22 Cal.4th at p. 578.)

### c.  *Hernandez v. Pacific Bell Telephone Co.* (2018) 29 Cal.App.5th 131

Subsequent to *Morillion*, and after the trial court ruled on the parties' cross-motions for summary adjudication in the instant case, the appellate court in *Hernandez v. Pacific Bell Telephone Co.* (2018) 29 Cal.App.5th 131 (*Hernandez*) addressed the issue of whether commute time was compensable in the context of an optional company vehicle program.  In *Hernandez*, the plaintiff employees installed and repaired video and Internet services at customers' residences for their defendant employer, Pacific Bell Telephone Company.  (*Id.* at p. 134.)  The employees participated in an "optional and voluntary" home dispatch program in which they were allowed to take a company vehicle home each night, instead of returning the vehicle to the company garage.  (*Id.* at pp. 134, 135.)  The company vehicle was "loaded" with tools and equipment, such as modems, cable boxes, and DVRs.  (*Id.* at p. 134, 141.)  Under the home dispatch program, the employees could use the company vehicle only for company business, only authorized persons could ride in the vehicle, employees could not engage in personal errands during their commute, and employees could not talk on a cell phone while driving even before it

18

was against the law. (*Id.* at pp. 135, 137.) Once a week, the employees visited the company garage to load equipment and tools needed for the week. (*Ibid*.) Employees were paid for this driving and loading time. (*Ibid.*) However, employees were not compensated for time spent commuting between their homes and customers' residences in the employer-provided vehicle. (*Id.* at p. 134.)

The appellate court applied the "control test" and determined that the employees' commute time in the company vehicle was not compensable because use of the company vehicle was optional. (*Hernandez*, *supra*, 29 Cal.App.5th at p. 141.) The court explained that "[t]he rule of *Morillion* applies only where use of the employer-provided transportation is *compulsory*." (*Id.* at p. 139.) Quoting from *Morillion*, the appellate court in *Hernandez* reiterated " 'that employers do not risk paying employees for their travel time merely by providing them transportation. Time employees spend traveling on transportation that an employer provides but does not require its employees to use may not be compensable as "hours worked." ' [Citation.]" (*Hernandez*, *supra*, at p. 141; accord, *Novoa v. Charter Communications, LLC* (E.D.Cal. 2015) 100 F.Supp.3d 1013, 1021 (*Novoa*) [use of company vehicle was optional and therefore technician's commute time was not compensable under California law]; see *Alcantar v. Hobart Service* (9th Cir. 2015) 800 F.3d 1047, 1050, 1055-1055 (*Alcantar*) [under California law, service technician had to establish that his commute in the employer's vehicle was required, and that the restrictions on his commute were such that he was under the employer's control]; *Rutti v. Lojack Corp.* (9th Cir. 2010) 596 F.3d 1046, 1049, 1061-1062 (*Rutti*) [based on California law, technician was under employer's control when he was required to drive the company vehicle and could not engage in personal errands, among other restrictions, while commuting.)

Because the appellate court in *Hernandez* determined that the employees' commute time was *not* compensable as "hours worked" under the control test, the appellate court proceeded to address whether that commute time was compensable under

19

the alternative "suffered or permitted to work" test. (Cal. Code Regs., tit. 8, § 11040, subd. (2)(K); *Hernandez*, *supra*, 29 Cal.App.5th at p. 141). The appellate court concluded that the commute time was also not compensable under this latter test. (*Hernandez*, *supra*, at pp. 141-145.)

### d. *Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038

More recently, in *Frlekin*, *supra*, 8 Cal.5th 1038, the California Supreme Court addressed the issue of employer control in the context of whether employees were entitled to wages for time awaiting and undergoing mandatory personal bag searches before exiting the employer's premises. (*Frlekin*, *supra*, 8 Cal.5th at p. 1042.) The court, citing *Morillion*, *supra*, 22 Cal.4th 575, reiterated that "an employee who is *subject to the control* of an employer does not have to be working during that time to be compensated under the applicable wage order." (*Frlekin*, *supra*, at p. 1046.)

However, the California Supreme Court in *Frlekin* also observed that "there are inherent differences between cases involving time spent traveling to and from work, and time spent at work. Commuting is an activity that employees ordinarily initiate on their own, prior to and after their regular workday, and is not generally compensable. [Citations.] Moreover, in the commute context, an employer's interest generally is limited to the employee's timely arrival. Generally speaking, it would not seem to matter to the employer how or when an employee travels, so long as the employee arrives on time. Thus, unless the employer compels the employee to use a certain kind of transportation or employer-provided transportation, it would be, without more, unreasonable to require the employer to pay for travel time." (*Frlekin*, *supra*, 8 Cal.5th at p. 1051.)

The California Supreme Court stated that, in contrast, in the case before it, the employer controlled its employees "at the workplace, where the employer's interest— . . . deterring theft—is inherently greater. Moreover, the level of [the employer's] control over its employees—the 'determinative' factor in analyzing whether

time is compensable under the control standard [citation]—is higher during an onsite search of an employee's bags, packages, and personal . . . devices. . . . Because [the employer's] business interests and level of control are greater in the context of an onsite search, the mandatory/voluntary distinction applied in *Morillion* is not dispositive in this context." (*Frlekin*, *supra*, 8 Cal.5th at p. 1051, italics omitted.).

The California Supreme Court identified an additional distinction between the nature of the controlled activity in the case before it, and *Morillion* and its progeny (including *Hernandez*, *supra*, 29 Cal.App.5th 131) which involved "optional services that primarily benefit the employee." (*Frlekin*, *supra*, 8 Cal.5th at p. 1051, italics omitted.) The court in *Frlekin* explained: "In *Morillion*, we characterized optional employer-provided transportation as an employee benefit that should be encouraged as a policy matter. [Citation.] We expressed optimism that our decision would not dissuade employers 'from providing free transportation as a service to their employees.' [Citation.]" (*Frlekin*, *supra*, 8 Cal.5th at pp. 1051-1052, italics omitted.) The court in *Frlekin* stated that, in contrast, in the case before it, the employer-controlled activity of bag searches primarily served and benefitted the employer's interests to detect and deter theft. (*Id.* at p. 1053.)

The California Supreme Court further indicated that whether the activity is compelled or required " 'is a flexible concept.' [Citation.] . . . '[O]nly "genuine" choices—and not "illusory" choices—avoid compensation liability under California's Wage Orders.' [Citations.] . . . [S]ome 'actions . . . are, practically speaking, required, even though they are nominally voluntary.' " (*Frlekin*, *supra*, 8 Cal.5th at p. 1054.)

After considering several additional factors that were relevant to "onsite employer-controlled activities," the California Supreme Court concluded that the employees at issue were subject to the employer's control while awaiting and during exit searches, and that therefore the employees were entitled to compensation for the time spent waiting for and undergoing those searches. (*Frlekin*, *supra*, 8 Cal.5th at p. 1056-1057, italics

omitted.)[7]  Because the court concluded that the employees were entitled to compensation under the control test, the court declined to express an opinion on whether the employees were alternatively entitled to compensation under the " 'suffered or permitted to work' " test.  (*Id.* at p. 1057.)

### e. Analysis

In this case, it is undisputed that defendant *required* service technicians to drive their *personal* vehicles for work, and that defendant did *not* have an express policy restricting service technicians from using their vehicles for personal pursuits during their commutes.  These facts alone distinguish the instant case from (1) *Morillion*, where employees were required to ride in an employer-provided bus;  (2) *Hernandez*, where employees were given the option to use a company vehicle albeit with express restrictions on personal use; and (3) *Frlekin*, where the employees were required to undergo exit bag searches on company premises.

Nevertheless, based on the legal principles and guidance set forth in *Morillion* and *Frlekin*, which we must follow as an intermediate court (*Auto Equity*, *supra*, 57 Cal.2d at p. 455), we determine that there are material factual disputes in this case regarding whether service technicians were precluded from using their commute time effectively

---

[7] *Frlekin*, *supra*, 8 Cal.5th 1038 was filed by the California Supreme Court after briefing was completed in the instant case.  The *Frlekin* case originated in federal court, and the parties in the instant case originally cited the federal district opinion, *Frlekin v. Apple Inc.* (N.D.Cal., Nov. 7, 2015, No. C 13-03451 WHA (lead); No. C 13-03775 WHA (consolidated); No. C 13-04727 WHA (consolidated)) 2015 U.S. Dist. LEXIS 151937.  The district court had determined that the plaintiff employees could not meet either the control test, or the suffered or permitted to work test, for purposes of hours worked under the relevant wage order, and consequently the federal district court granted summary judgment in favor of the employer.  (*Id.* at pp. *10-*11, *31, *36-*37.)

The employees appealed to the Ninth Circuit Court of Appeals.  The Ninth Circuit thereafter certified to the California Supreme Court the question of whether the time spent by employees waiting for and undergoing a required search of bags was compensable as hours worked.  (*Frlekin v. Apple, Inc.* (9th Cir. 2017) 870 F.3d 867, 869.)  The California Supreme Court granted the Ninth Circuit's request, which resulted in the California Supreme Court's opinion in *Frlekin*, *supra*, 8 Cal.5th 1038.

for their own purposes such that they were "subject to the control" of defendant. (Cal. Code Regs., tit. 8, § 11040, subd. 2(K).) On the one hand, if carrying tools and parts in a service technician's personal vehicle during the commute was optional, then the service technician was not "subject to the control of [defendant]" for purposes of determining whether that time constituted "hours worked." (Cal. Code Regs., tit. 8, § 11040, subds. 2(K), 4(B); see *Morillion*, *supra*, 22 Cal.4th at p. 594.) Further, even if a service technician was required—"strictly speaking" or "as a practical matter"—to carry tools and parts during the commute, the service technician would not be "subject to the control of [defendant]" during the commute if the service technician was able "to use 'the time effectively for [the service technician's] own purposes.' " (*Frlekin*, *supra*, 8 Cal.5th at p. 1054; Cal. Code Regs., tit. 8, § 11040, subd. 2(K); *Morillion*, *supra*, at p. 586.) On the other hand, if a service technician was required during the commute to carry a volume of tools and parts that did "not allow [the service technician] to use 'the time effectively for [the service technician's] own purposes," then the technician would be "subject to the control of [defendant]" for purposes of determining "hours worked" and entitlement to wages. (*Morillion*, *supra*, at p. 586; Cal. Code Regs., tit. 8, § 11040, subds. 2(K) & 4(B).) In this case, there are factual disputes regarding whether service technicians were required to carry tools and parts in their personal vehicles during their commutes, and regarding the volume of tools and parts that they were required to carry during their commutes.

First, there is a factual dispute regarding *whether* service technicians were required, either strictly speaking or as a practical matter, to commute with tools and parts in their personal vehicles. Defendant had a written policy requiring parts to be stored in the service technician's vehicle. Any exceptions to this policy required a manager's approval. The circumstances under which manager approval was sought by service technicians, or given by managers, are not clear from the record. The evidence reflects that although some service technicians had access to and the option to use a field stocking

23

location where parts could be stored, other service technicians did not have such storage access and/or were told to carry as many parts as possible in their vehicle. Further, based on defendant's performance criteria for service technicians, a reasonable inference arises that the performance criteria were more readily satisfied if a service technician commuted with tools and parts in the service technician's vehicle, rather than spending work time picking up parts from a storage location and then driving to the first customer of the day.

Second, there is a factual dispute regarding the *volume of tools and parts* that service technicians were required to carry in their vehicles while commuting. Again, a reasonable inference arises that a service technician more readily satisfied defendant's performance criteria if the service technician carried more, rather than less, parts in the vehicle. Moreover, defendant's written policy required "a late-model vehicle in good repair and appearance with no less than twenty-five (25) cubic feet of lockable cargo space" to carry tools and parts. However, there was evidence that some service technicians did not comply with the written policy and drove cars with smaller cargo space. For example, whereas one service technician indicated that he routinely carried at least 400 pounds of equipment and tools in his van even with access to a storage locker, another service technician who did not have a parts storage location was able to keep almost all assigned parts in his Audi coupe. However, another service technician, who drove a Corolla, had a trunk and back seat "full" of tools and parts and, at times, could not see out the back window.

The record reflects that, as a practical matter, the available space in a service technician's vehicle would have been limited depending on the volume of parts the service technician was required to carry during the commute, which would accordingly limit the service technician's personal pursuits. One service technician testified that, to use his vehicle for personal reasons on weekends, such as to go out with family or friends, he unloaded the parts from his vehicle on weekends and then reloaded the vehicle on Sunday night. Another service technician likewise testified that he had to unload his

24

vehicle when he wanted to use it for personal reasons on the weekends. Along these lines, plaintiff Cagonot testified that on weekends, he drove his wife's vehicle because he did not want to remove the parts in his vehicle and then put them back in. In view of the evidence that some service technician's vehicles were nearly completely full with tools and parts, along with the evidence of the impact that tools and parts in vehicles had on service technicians on the weekends, a reasonable inference arises that at least some service technicians' personal pursuits during commute times would have been restricted by the volume of parts in their vehicles.

We understand defendant to contend that the presence of tools or parts in its service technicians' personal vehicles is not relevant to the issue of whether it exercised control. In this regard, defendant observes that in certain federal court cases that have addressed the issue of commuting by technicians under California law, the existence of tools and parts was "not material to the courts' analyses or even discussed" regarding whether those technicians' commute time was compensable. (See *Alcantar*, *supra*, 800 F.3d at pp. 1049-1050 [service technician maintained and repaired commercial food equipment]; *Rutti*, *supra*, 596 F.3d at p. 1049 [technician installed and repaired vehicle recovery systems in vehicles]; *Novoa*, *supra*, 100 F.Supp.3d at pp. 1013, 1021 [technician installed, repaired, and disconnected broadband services]; see also *Stevens v. GCS Serv.* (9th Cir. 2008) 281 Fed. Appx. 670.)

However, as the California Supreme Court explained, "[t]he level of the employer's control over its employees . . . is determinative. [Citations.]" (*Morillion*, *supra*, 22 Cal.4th at p. 587.) While commuting, employees must be able "to use 'the time effectively for [their] own purposes.' [Citation.]" (*Id.* at p. 586.) Neither *Morillion* nor the federal cases cited by defendant purport to contain an exhaustive list of the facts that may be considered in determining whether an employee is able to use commute time effectively for the employee's own purpose. Moreover, *Morillion* and the federal cases cited by defendant involve different factual circumstances than this case, which involves

25

defendant's requirement of a personal vehicle and the purported requirement that tools and parts remain in the vehicle during the commute.

In sum, if carrying tools and parts during the commute was optional, then a service technician was not "subject to the control of [defendant]" for purposes of determining whether that time constituted "hours worked." (Cal. Code Regs., tit. 8, § 11040, subds. 2(K), 4(B); see *Morillion*, *supra*, 22 Cal.4th at p. 594.) Likewise, even if a service technician was required—"strictly speaking" or "as a practical matter"——to carry tools and parts during the commute, the service technician would not be "subject to the control of [defendant]" during the commute if the service technician was able "to use 'the time effectively for [the service technician's] own purposes.' " (*Frlekin*, *supra*, 8 Cal.5th at p. 1054; Cal. Code Regs., tit. 8, § 11040, subd. 2(K); *Morillion*, *supra*, at p. 586.) On the other hand, if a service technician was required during the commute to carry a volume of tools and parts that did "not allow [the service technician] to use 'the time effectively for [the service technician's] own purposes," then the technician would be "subject to the control of [defendant]" for purposes of determining "hours worked" and entitlement to wages. (*Morillion*, *supra*, at p. 586; Cal. Code Regs., tit. 8, § 11040, subds. 2(K) & 4(B).) Triable issues of material fact exist regarding whether service technicians were required to carry tools and parts in their personal vehicles during their commutes, and regarding the volume of tools and parts that they were required to carry during their commutes. As a result, summary adjudication should not have been granted in defendant's favor on the issue of whether it was obligated to pay service technicians for their commute time.

## 2. Suffered or Permitted to Work

Because we have determined that triable issues of material fact exist regarding whether service technicians' commute time constitutes "hours worked" under the control factor, we need not determine whether a triable issue exists regarding "hours worked" under the "suffered or permitted to work" factor. (See Cal. Code Regs., tit. 8, § 11040,

26

subds. 2(K) & 4(B); *Morillion*, *supra*, 22 Cal.4th at pp. 582, 584 [control and suffered or permitted to work are independent factors].)

### 3. Other Authorities

We observe that plaintiffs, in contending that their commute time is compensable, rely on (1) section 200 among other Labor Code sections, (2) a DLSE opinion letter, (3) workers' compensation and other cases outside the wage and hour context, and (4) cases decided under federal law. We do not find the cited authority helpful in resolving the question of whether plaintiffs' commute time is compensable in this case.

First, section 200 defines the terms "wages" and "labor." " 'Wages' includes all amounts for labor performed by employees . . . ." (*Id.*, § 200, subd. (a).) " 'Labor' includes labor, work, or service whether rendered or performed under contract . . . or other agreement if the labor to be paid for is performed personally by the person demanding payment." (*Id.*, § 200, subd. (b).) We understand plaintiffs to contend that they were entitled to compensation for commuting because they were performing a "service" for defendant within the meaning of section 200, subdivision (a), when they "transport[ed] in their personal vehicles [defendant's] parts and tools to and from customer locations, without which technicians cannot do their jobs." To the extent plaintiffs are arguing that simply performing a service for an employer is sufficient to trigger the obligation to pay wages, and that they do not need to meet either of the factors defining "hours worked" under Wage Order No. 4, that is, "control" by the employer or "suffered or permitted to work," we are not persuaded by plaintiffs' argument. (Cal. Code Regs., tit. 8, § 11040, subd. 2(K).) Section 200 defines wages in terms of "labor performed" by an employee, and labor is defined to include "labor, work, or service." (§ 200, subds. (a) & (b).) Plaintiffs offer no authority to support the proposition that the legal standard for determining whether wages are owed differs depending on whether the employee performed/rendered work versus service.

27

Second, regarding the DLSE opinion letter, we observe that " '[t]he DLSE "is the state agency empowered to enforce California's labor laws, including IWC wage orders." ' [Citation.] The DLSE's opinion letters, ' " ' "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." ' " ' [Citations.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1029, fn. 11.) A court may adopt the DLSE's interpretation if the court independently determines that the interpretation is correct. (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563 (*Gattuso*); *Morillion*, *supra*, 22 Cal.4th at p. 584.)

In this case, plaintiffs rely on a DLSE opinion letter regarding an employee whose commute alternated between two worksites. (Dept. of Industrial Relations, DLSE, Counsel H. Thomas Cadell, Jr., Opn. letter No. 2003.04.22, Travel Time Pay for Employee with Alternative Worksites (Apr. 22, 2003), at p. 1 <https://www.dir.ca.gov/dlse/opinions/2003-04-22.pdf> [as of June 1, 2020], archived at <perma.cc/A5QZ-AG4L>.) A company vehicle was furnished to the employee, who did " 'not transport any significant materials from one worksite to the other.' " (*Ibid.*) The DLSE identified several factors for determining whether some or all the employee's commute time was compensable. The employee's occupation was not identified in the letter. However, the DLSE provided hypothetical examples involving different types of construction workers and whether their commute time was compensable. Relevant here, the DLSE further stated: "Also, if the travel involved the employee being required to deliver any equipment, goods or materials for the employer, the travel, no matter how extended, would be compensable." (*Id.* at p. 3.)

In this case, the parties dispute (1) whether the above-quoted sentence regarding the delivery of equipment in the DLSE opinion letter was in reference to the employee who prompted the letter, or to one of the construction workers described in the hypothetical examples, (2) whether the reference to "equipment, goods or materials" in

28

the letter includes the tools and parts at issue in this case, (3) the meaning of "deliver" in the letter, and (4) whether service technicians in this case "deliver" anything to customers. Given the ambiguity regarding the factual context of the statement and the lack of legal analysis for the conclusion stated, it is difficult to determine whether the DLSE's general statement that the "deliver[y]" of "any equipment, goods or materials for the employer" is compensable travel time applies in this case. For that reason, we do not find the DLSE's general statement in the letter to provide much guidance in resolving the issues in the instant case. (See *Hernandez*, *supra*, 29 Cal.App.5th at p. 143 [regarding the same opinion letter and statement by the DLSE, the appellate court did "not find the 'tangential and conclusory' statement . . . persuasive on the question" of whether transporting equipment and tools during a commute is compensable time].)

Third, plaintiffs rely on workers' compensation cases, along with tort and disability retirement benefits cases, that address whether an employee, who was required to use a personal vehicle for work, was acting within the course or scope of employment when the employee suffered an injury, or injured someone else, while commuting. (See, e.g., *Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 151-153, 157, 163; *Joyner v. Workers' Comp. Appeals Bd.* (1968) 266 Cal.App.2d 470, 471-472, 474, 476-477; *Lane v. Industrial Acc. Com.* (1958) 164 Cal.App.2d 523, 525, 526-528; *Moradi v. Marsh USA, Inc.* (2013) 219 Cal.App.4th 886, 890-891, 894 [respondeat superior / tort case]; *Singh v. Board of Retirement* (1996) 41 Cal.App.4th 1180, 1182-1183, 1188 [disability retirement benefits case].) We understand plaintiffs to be contending that, because defendant required that they drive their personal vehicles to transport tools and parts for work, they were acting in the course and scope of their employment when they commuted in their personal vehicles with tools and parts. To the extent plaintiffs seek to rely on these cases from outside the wage and hour context to support the contention that they are entitled to compensation for commute time, plaintiffs do not persuasively articulate why the legal standard in those cases—course or scope of employment—is the

proper test for determining whether an employee is subject to the "control" of an employer or "is suffered or permitted to work" for purposes of determining " '[h]ours worked' " under the wage order. (Cal. Code Regs., tit. 8, § 11040, subd. 2(K).)

Fourth, we likewise find unhelpful plaintiffs' reliance on federal cases applying federal labor law. "[California] law may provide employees greater protection" than federal law. (*Morillion*, *supra*, 22 Cal.4th at p. 592.) The California Supreme Court specifically recognized this principle in the context of whether commute time is compensable under state versus federal law. (*Ibid*.) Under the federal Portal-to-Portal Act (29 U.S.C. § 251 et seq.), which amended the Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.), an employer is *not* required to pay an employee for "traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform." (29 U.S.C. § 254(a)(1).)[8] Thus, "[n]ormal travel from home to work" is not compensable under federal law, regardless of "whether [the employee] works at a fixed location or at different job sites." (29 C.F.R. § 785.35 (2020).)

In contrast to "the Portal-to-Portal Act, which expressly and specifically exempts travel time as compensable activity under the FLSA," "[t]he California Labor Code and

---

[8] Title 29 United States Code section 254(a) generally provides that an employer is not required to compensate an employee for the following activities: "(1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and [¶] (2) activities which are preliminary to or postliminary to said principal activity or activities, [¶] which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee."

IWC wage orders do not contain an express exemption for travel time." (*Morillion*, *supra*, 22 Cal.4th at p. 590.)  In the absence of convincing evidence that the IWC intended to adopt the federal standard for determining whether time spent traveling is compensable under California law, the California Supreme Court has "decline[d] to import any federal standard, which expressly eliminates substantial protections to employees, by implication." (*Id.* at p. 592.)  Consequently, because the federal statutory scheme "differs substantially from the state scheme," the California Supreme Court has stated that the federal statutory scheme "should be given no deference." (*Morillion*, *supra*, 22 Cal.4th at p. 588.)

Plaintiffs contend that travel time is compensable under federal law under certain circumstances.  Plaintiffs argue that if travel time under those circumstances are compensable "under the more restrictive Portal-to-Portal Act," then such travel time should necessarily be compensable under the more protective California scheme.

We are not persuaded by plaintiffs' argument.  Plaintiffs fail to explain how or why the legal standard applied under federal law for determining the compensability of commute time is consistent with the standard under California law.

Further, the federal authorities cited by plaintiffs do not appear to encompass the factual circumstances of this case, that is, commuting from home in a personal vehicle with some volume of tools or parts.  For example, plaintiff cites 29 Code of Federal Regulations part 790.7(d) (2020).  That regulation, however, indicates that travel by a logger "carrying . . . a portable power saw or other heavy equipment (as distinguished from ordinary hand tools) on his trip into the woods to the cutting area" would be compensable travel time.  (*Ibid.*)  Likewise, several of the federal cases relied on by plaintiffs "involve the *delivery* of heavy, specialized equipment to the jobsite" (*Hernandez*, *supra*, 29 Cal.App.5th at p. 144).  (See, e.g., *D A & S Oil Well Servicing, Inc. v. Mitchell* (10th Cir. 1958) 262 F.2d 552, 553 (*D A & S*) [company trucks mounted with either 30,000-pound equipment or 109-gallon butane gas tanks]; *Crenshaw v.*

31

*Quarles Drilling Corp.* (10th Cir. 1986) 798 F.2d 1345, 1346, 1350 [employee for oil and gas contractor that had mobile drilling units drove a "specially equipped [company] truck containing many of the tools that [the employee] needed to service [the] drilling rigs"]; *Baker v. Barnard Construction Co.* (D.N.M., Nov. 16, 1998, Civ. 93-140 BB/RLP) 1998 U.S. Dist. LEXIS 23589, at p. *5 [employees required to drive a welding rig, which was a "specially-equipped truck containing a welding machine permanently mounted on the truck bed, oxygen and acetylene bottles, and all the requisite tools and supplies to perform pipe welding"].)  Here, there is no evidence that plaintiffs carried a power saw or other heavy equipment, as distinguished from ordinary hand tools, or that plaintiffs were involved in the delivery of heavy, specialized equipment that is similar to the equipment in the cited cases.

Alternatively, the federal cases cited by plaintiffs involve certain travel time that plaintiffs are already compensated for in this case, such as travel time between the employer's property and the jobsite/customer site.  (See *Russano v. Premier Aerial & Fleet Inspections, LLC* (E.D.Mich., Aug. 4, 2016, No. 14-cv-14937) 2016 U.S. Dist. LEXIS 102313, at pp. *2-*3, *12-*13; *D A & S*, *supra*, 262 F.2d at p. 554; *Lacy v. Reddy Elec. Co.* (S.D.Ohio, July 11, 2013, No. 3:11-cv-52) 2013 U.S. Dist. LEXIS 97718, at pp. *3-*4; *Herman v. Rich Kramer Construction, Inc.* (8th Cir. Sep. 21, 1998, No. 97-4308WMS) 1998 U.S. App. LEXIS 23329, at pp. *2, *4-*5; *McLaughlin v. Somnograph, Inc.* (D.Kan., Dec. 21, 2005, No. 04-1274-MLB) 2005 U.S. Dist. LEXIS 38562, at pp. *4-*5, *14-*17; *Sakas v. Settle Down Enterprises, Inc.* (N.D.Ga. 2000) 90 F.Supp.2d 1267, 1272-1273, 1280-1281.)

### C. *Mileage Reimbursement Under Section 2802*

The second issue that defendant addressed in its motion for summary adjudication was whether it was obligated to reimburse service technicians for miles driven in their personal vehicles between home and their first or last worksite of the day.

Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ." (§ 2802, subd. (a).) "[T]he term 'necessary expenditures or losses' shall include all reasonable costs." (*Id.*, subd. (c).) " 'Section 2802 is designed to prevent employers from passing their operating expenses on to their employees. For example, if an employer requires an employee to travel on company business, the employer must reimburse the employee for the cost of that travel under Section 2802.' [Citation.]" (*Gattuso*, *supra*, 42 Cal.4th at p. 562.) Likewise, an employer must reimburse employees for vehicle expenses that they necessarily incur in performing their employment tasks. (See *id.* at pp. 567, 568.) An employer's reimbursement obligation may be satisfied by paying actual expenses or mileage. (*See id.* at p. 569.)

We understand plaintiffs to contend that, because service technicians' duties require them to commute in personal vehicles while transporting defendant's tools and parts, they must be reimbursed for commute mileage under section 2802.

Defendant disputes that commute expenses must always be borne by the employer whenever a personal vehicle is required for work.

We need not resolve the issue of whether an employer's requirement of a personal vehicle by itself is sufficient to trigger a mileage reimbursement obligation under section 2802. Defendant concedes that if service technicians are owed wages for their commute time, then they are also owed reimbursement for commuting mileage under section 2802. Because we have determined that triable issues of fact exist regarding whether service technicians are entitled to wages for the time spent commuting, triable issues of fact also exist regarding whether service technicians are entitled to mileage reimbursement under section 2802 for their commute.

33

## V. DISPOSITION

The judgment is reversed. On remand, the trial court shall vacate its order granting summary adjudication in favor of defendant on the issues set forth in the parties' stipulation and enter a new order denying defendant's summary adjudication motion in its entirety.

_____

Bamattre-Manoukian, J.


WE CONCUR:



_____

ELIA, ACTING P.J.




_____

MIHARA, J.




*Oliver et al. v. Konica Minolta Business Solutions USA*
**H045069**

Filed 6/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL OLIVER et al., | H045069 |
| | (Santa Clara County |
| Plaintiffs and Appellants, | Super. Ct. No. 2014-1-CV-263183) |
| v. | ORDER CERTIFYING OPINION |
| | FOR PUBLICATION |
| KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., | |
| Defendant and Respondent. | |

THE COURT:

The opinion in the above-entitled matter filed on June 2, 2020, was not certified for publication in the Official Reports. The California Employment Lawyers Association, Centro Legal de la Raza, Legal Aid at Work, and Bet Tzedek request the opinion be certified for publication. Under California Rules of Court, rule 8.1105(c), the opinion is ordered published.

_____
BAMATTRE-MANOUKIAN, J.



_____
ELIA, ACTING P.J.



_____
MIHARA, J.










*Oliver et al. v. Konica Minolta Business Solutions USA*
**H045069**

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No.:  2014-1-CV-263183 |
| | |
| Trial Judge: | Hon. Peter H. Kirwan |
| | |
| Attorneys for Plaintiffs and Appellants:<br>Michael Oliver et al. | Robin Workman<br>Rachel E. Davey<br>Workman Maw Firm, PC |
| | |
| Attorneys for Defendant and Respondent:<br>Konica Minolta Business Solutions<br>U.S.A., Inc. | Eric Edward Hill<br>Loren Gesinsky<br>Eden Anderson<br>Seyfarth Shaw LLP |

*Oliver et al. v. Konica Minolta Business Solutions USA*
**H045069**